WICKES MANUFACTURING COMPANY *v.* CURRIER
ELECTRIC COMPANY, INC., ET AL.
(9194)

DALY, LAVERY and LANDAU, Js.

Argued May 2—decision released September 17, 1991

*Joseph P. Fasi,* for the appellant-appellee (plaintiff).

*M. J. Daly III,* for the appellee-appellant (named defendant).

*Steven M. Greenspan,* with whom, on the brief, was *Kirk D. Tavtigian, Jr.,* for the appellee (defendant United States Fidelity and Guaranty Company).

DALY, J. The plaintiff's predecessor, Eagle Signal Corporation (Eagle), instituted this action under General Statutes § 49-42[1] seeking reimbursement for equipment furnished to the named defendant, a general contractor (contractor) that had contracted with the state to install traffic control lights in Stamford. Also named as a defendant in this action is United States Fidelity and Guaranty Company (USF&G), which furnished a payment bond pursuant to General Statutes § 49-41.[2] The trial court rendered judgment in favor of the plaintiff on its complaint for $58,184.52, plus interest and attorney's fees, against the contractor and for the plaintiff on the contractor's counterclaim. The trial court found in favor of USF&G on the plaintiff's complaint and for the plaintiff on USF&G's counterclaim. The plaintiff and the contractor have appealed.

The plaintiff appeals from the judgment rendered in favor of USF&G claiming that the trial court failed to recognize that the original contract between the plaintiff's predecessor, Eagle, and the contractor had been modified to include turn-on services. The plaintiff further claims that the trial court incorrectly concluded that the consulting services, manuals and equipment schematics it provided were not labor and materials

[1] General Statutes § 49-42 provides in pertinent part: "(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full . . . may enforce his right to payment under the bond by serving a notice of claim . . . .

"(b) Every suit instituted under this section shall be brought in the name of the person suing . . . but no such suit may be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by the claimant."

[2] General Statutes § 49-41 provides in pertinent part: "(a) Before any contract . . . for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person . . . that person shall furnish to the state or the subdivision a bond . . . for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract . . . ."

pursuant to General Statutes § 49-42 (b). The contractor cross appeals[3] claiming that the trial court improperly granted the plaintiff's motion permitting it to be substituted as the plaintiff in place of Eagle. USF&G adopted the contractor's issues on appeal.

The trial court found the following facts. On March 30, 1978, the contractor entered into an agreement with the Connecticut department of transportation (DOT) to install new traffic control lights at sixteen intersections in Stamford for $512,217. USF&G furnished the bond on the contract. On January 16, 1980, the contractor entered into a contract for $144,599 with Eagle to supply traffic control devices with solid state activated controllers. Eagle shipped the devices during July and August of 1980, and billed the contractor on August 25, 1980, for the agreed price. Some problems occurred with the devices, and Eagle corrected them. The DOT paid the contractor the total contract price in November of 1980 and accepted the project in March, 1982. Eagle sued the defendants for the balance due of $58,184.52.

The contractor denied owing any balance and filed a counterclaim claiming that the equipment supplied by Eagle was defective and did not conform to or function as required by the DOT specifications. The contractor claimed that it was forced to expend additional sums to complete the contract and was subject to damage claims by the DOT.

---

[3] The plaintiff moved to dismiss the cross appeal of the named defendant because the plaintiff "did not appeal from the judgment entered against Currier Electric," but rather appealed from " 'the final judgment in favor of USF&G Co.' " The motion to dismiss the cross appeal was denied. Where only one judgment exists from which an appeal could be taken, a cross appeal may properly be filed by an aggrieved appellee. This rationale also applies when a defendant appeals and a plaintiff cross appeals as to defendants who did not appeal and who are appellees to the main appeal.

Eagle instituted this action on January 26, 1983, and USF&G claimed the action was untimely under General Statutes § 49-42 (b), which provides that "no such suit may be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by the claimant." Relying on the following findings, the trial court agreed that the action was untimely. Contrary to the plaintiff's claims, there was no contractual agreement that Eagle perform turn-on services until acceptance by the DOT in March, 1982. Eagle did not have any employees on the job site after January 16, 1982. The trial court found that Eagle's telephone discussion on January 27, 1982, plus the replacement of some defective parts, did not constitute the furnishing of labor or materials under § 49-42 (b). Likewise, the further provision of service manuals and schematics on August 20, 1982, did not constitute labor and materials under § 49-42 (b).

By motion dated April 19, 1989, Wickes Manufacturing Company (Wickes) moved that it be substituted as party plaintiff. The trial court found that Eagle had been purchased in 1981 by Gulf & Western Manufacturing Company, which subsequently became Sorensen Manufacturing Company, and, on September 25, 1985, became Wickes. The trial court granted the motion finding that the action commenced in the name of Eagle was a mistake and that the substitution of Wickes was necessary for the determination of the case. The trial court rendered judgment on May 7, 1990.

I

The plaintiff first claims that the original contract did not require it to supervise the installation, start-up or DOT test compliance of the equipment but that the contract was subsequently modified to provide for

such supervision. Such a modification is known in the trade as a turn-on contract.[4]

" ' "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are *clearly erroneous.*" (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).' . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, 'we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled.' . . . ' "A factual finding may be rejected by this court only if it is 'clearly erroneous.' ". . .' " (Citations omitted.) *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 153, 527 A.2d 679 (1987).

Whether a contract exists is a question of fact or a mixed question of fact and law for the court to determine. See *Gianetti* v. *Norwalk Hospital,* 211 Conn. 51, 58 n.6, 557 A.2d 1249 (1989). The existence and terms of a contract are determined from the intent of the parties. See *Steeltech Building Products, Inc.* v. *Edward Sutt Associates, Inc.,* 18 Conn. App. 469, 471, 559 A.2d 228 (1989). "The parties' intentions manifested by their acts and words are essential to the court's determina-

---

[4] The plaintiff did not allege a modification of the January 16, 1980 contract in its complaint.

tion of whether a contract was entered into and what its terms were." Id., 471–72. It is within the province of the trier to draw reasonable and logical inferences from the facts proven. B. Holden & J. Daly, Connecticut Evidence § 64, p. 417.

The trial court could reasonably infer that Eagle had completed the contract on August 25, 1980, when it billed the contractor for $144,559, the complete contract price, and charged interest as of that date. The contractor was paid the total contract price by the state in November of 1980. Furthermore, there was evidence that supervision of start-up and testing of equipment after installation is not normally provided by the supplier unless it is included in the original project requirements. From our review of the record we cannot say that the trial court was clearly erroneous in finding no contract modification was entered into between the parties that resulted in a turn-on contract.

## II

The plaintiff contends that it provided labor and materials on the following occasions thereby tolling § 49-42 (b). On January 27, 1982, a Stamford employee telephoned the plaintiff seeking advice in the wake of experiments carried out on the signalling equipment by city and state employees. On August 20, 1982, the plaintiff sent to the contractor copies of the equipment schematics and the service manuals that had previously been delivered.

This action was brought pursuant to § 49-42; "[that] statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with." *Pittsburgh Plate Glass Co.* v. *Dahm,* 159 Conn. 563, 565, 271 A.2d 55 (1970). "[T]he similarity between § 49-42 and the federal statute, popularly known as the Miller Act (40 U.S.C. §§ 270 a–d), makes the decisions of the federal

courts relative to the latter helpful." Id., 567. We seek guidance from the federal case law in determining what constitutes labor and materials under § 49-42 because there is no comprehensive definition of what these terms encompass under our statute. See *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.,* 151 Conn. 325, 335, 197 A.2d 638 (1964).

The limitations period of the Miller Act cannot be extended by correcting defects. *United States* v. *Hesselden Construction Co.,* 404 F.2d 774, 776 (10th Cir. 1968). Repair work does not constitute the supplying of labor and materials under the Miller Act. *United States* v. *E.J.T. Construction Co.,* 415 F. Sup. 1328, 1332 (D. Del. 1976). If additional material is provided to make repairs or provide replacement parts, the running of the statute is not tolled. See *General Ins. Co. of America* v. *United States,* 409 F.2d 1326, 1327 (5th Cir. 1969).

The plaintiff's telephone advice given to the Stamford employee was related to some sequencing problems in the signal equipment. The trial court found that it was not turn-on advice and no charge was billed for the conversation. The trial court cannot be held to be clearly erroneous in finding that this free advice was not labor that tolled § 49-42 (b).

The equipment schematics and service manuals that the plaintiff shipped to the contractor were copies of documents previously shipped. The trial court found that such a shipment was not required under the contract between the plaintiff and the contractor and was furnished as a courtesy. See, e.g., *Morefield Communications, Inc.* v. *Pursel Construction Co.,* 359 Pa. Super. 514, 519, 519 A.2d 470 (1986). The trial court was not clearly erroneous, therefore, in finding that these schematics and manuals were not material that tolled § 49-42 (b).

The plaintiff claims that it should prevail on the basis of *Trinity Universal Ins. Co.* v. *Girdner,* 379 F.2d 317 (5th Cir. 1967). In *Trinity,* the only work performed by the subcontractor within the year before commencement of the action was the replacement of some defective pipe insulation, which he had previously installed, and the replacement of an air conditioner seal. This work was performed to comply with the demand of a government inspector who refused to approve the original work until such repairs were effected. The *Trinity* court held these tasks to be labor and material that tolled the Miller Act. Later cases, however, indicate that supplying labor or materials to correct defects or make repairs after completion of the work does not toll the time period under the Miller Act. See *General Ins. Co. of America* v. *United States,* supra; *United States for Use of Magna Masonry, Inc.* v. *R. T. Woodfield, Inc.,* 709 F.2d 249 (4th Cir. 1983).

In the present case, Eagle had completely supplied the equipment required under the original contract by August of 1980 and billed the contractor for the complete contract price on August 25, 1980. The DOT paid the contractor the total contract price of Eagle's equipment in November of 1980. Thus, finding no work performed after August of 1980 that can be characterized as anything other than the correcting of defects; see *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.,* supra; we conclude that the filing of this action as to USF&G on January 26, 1983, was barred by the one year limitations period of § 49-42 (b). See, e.g., *United States* v. *H.I. Lewis Construction Co.,* 375 F.2d 194 (2d Cir. 1967).

Finally, we note that in the plaintiff's amended complaint it alleged that it last performed labor or supplied material on February 1, 1982. The plaintiff now claims that it furnished such labor and material on January 27 and August 20 of 1982. " ' "It is fundamental in our

law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . ." ' " (Citations omitted.) *Robert S. Weiss & Associates, Inc.* v. *Wiederlight,* 208 Conn. 525, 537, 546 A.2d 216 (1988).

## III

Both defendants claim that the trial court improperly granted the plaintiff's motion dated April 19, 1989, that substituted Wickes as the party plaintiff. "The decision whether to grant a motion for the addition or substitution of a party to legal proceedings rests in the sound discretion of the trial court. . . . In reviewing the trial court's exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness . . . and only if its action discloses a clear abuse of discretion is our interference warranted." (Citations omitted.) *Poly-Pak Corporation of America* v. *Barrett,* 1 Conn. App. 99, 102, 468 A.2d 1260 (1983).

"When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted . . . ." General Statutes § 52-109; Practice Book § 101. The trial court found that Eagle was the original party to the contract with the contractor, but that at the time the action was commenced it no longer existed. Wickes was Eagle's successor-in-interest and the proper party to the lawsuit. The trial court held that commencing the action in the name of Eagle was a mistake and allowed Wickes to be substituted as necessary for a determination of the matters in dispute. This substitution for reason of mistake is clearly authorized by § 52-109 and a review of the record supports the trial court's conclusion. Thus, the

trial court was well within its sound discretion to grant the plaintiff's motion and we find no abuse of that discretion.

The judgment is affirmed.

In this opinion the other judges concurred.