[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, American Masons' and Building Supply Company (hereinafter "American Masons"), commenced this action for damages on a bond furnished pursuant to General Statutes 49-41 et seq. (hereinafter the "Little Miller Act"). The defendants are Vinco, Incorporated (hereinafter "Vinco"), the general contractor for the construction of a CT Page 6055-b municipal office complex for the Town of Colchester and principal on the bond, and the Federal Insurance Company, the surety who issued the Labor and Material Payment Bond for the project.
The parties stipulated to the following relevant facts:
 (1) On March 10, 1989, Vinco entered into a general construction contract with the Town of Colchester.
 (2) Pursuant to General Statutes 49-41, Vinco, as principal, and Federal Insurance Company, as surety, provided a labor and material payment bond.
 (3) Vinco entered into various subcontracts.
(4) On March 31, 1989, Sarma CT Page 6055-c Masonry, Inc. and Vinco entered into a subcontract for the performance of certain masonry work.
 (5) American Masons supplied Sarma with certain materials for this project.
 (6) These materials were supplied between July 27, 1989 and September 11, 1990.
 (7) American Masons supplied materials to Sarma as follows:
 Invoice Number Amount Date
 53977 $ 26.40 07/27/89 54477 1,345.20 08/11/89 54491 122.50 08/14/89 54958 212.00 08/29/89 CT Page 6055-d 55373 1,255.50 09/13/89 55494 412.50 09/18/89 56275 543.86 10/17/89 56355 536.18 10/19/89 56421 148.56 10/23/89 56687 470.00 10/31/89 57218 236.75 05/21/90 58476 87.50 05/29/90 63670 4.50 09/11/90
Total: $5,401.25
 (8) All materials aforementioned were incorporated into the project.
 (9) American Masons did not have a contractual relationship with Vinco.
 (10) American Masons was a supplier to Sarma which was a subcontractor to Vinco. CT Page 6055-e
 (11) American Masons did not have a contract with Sarma to supply all materials on this project.
 (12) American Masons supplied the materials to Sarma on an open account basis.
 (13) Each invoice for materials delivered or picked up was its own separate contract.
 (14) Sarma was not obligated to purchase any or all materials from American Masons for this project.
 (15) By purchasing materials from American Masons, Sarma was not obligated to purchase additional materials. CT Page 6055-f
 (16) Vinco and Federal paid the plaintiff the sum of $328.75 representing invoice numbers 57218, 58476 and 63670 under an agreement that it [the payment] should not prejudice any rights of American Masons to pursue the remainder of the claim.
 (17) The total amount of American Masons claim, after credit of the $328.75 for the three invoices paid excluding applicable interest, is $5,073.50.
 (18) Notice of the claim was sent by American Masons to Vinco and Federal on November 6, 1990.
General Statutes 49-42 provides in CT Page 6055-g relevant part:
 (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of 49-41 and who has not yet been paid in full heretofore before the expiration period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundred eighty days after the date on which he performed the last of the labor or furnished the last of the material for which the claim is CT Page 6055-h made, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond.
The defendant Federal Insurance Company denied the plaintiff's claim for payment on the ground that the notice of claim was untimely for those materials furnished prior to May 21, 1990, because the materials were furnished more than one hundred eighty days before the notice of claim was sent.
The plaintiff argues that General Statutes49-42(a) requires that the notice of claim be sent within one hundred eighty days after the date the last materials were furnished, which occurred in this instance on September 11, 1990. Therefore, the plaintiff concludes, the notice sent on November 6, 1990 was timely as to all materials furnished.
The defendants argue that because each time the plaintiff furnished materials under these circumstances it CT Page 6055-i did so pursuant to a separate contract, then the notice provision of General Statutes 49-42(a) requires that either notice be given within one hundred eighty days after each date that the plaintiff furnished materials or after the last date that materials were furnished provided that there are no intervening gaps between such purchases of more than one hundred eighty days.
The appellate courts of this state have yet to address this issue. However, the appellate courts have interpreted provisions of this statute which provide guidance in the interpretation of the notice provision at hand.[1]
In Okee Industries, Inc. v. National Grange Mutual Insurance Company, 225 Conn. 367, ___ A.2d ___ (1993), the plaintiff subcontractor sought to recover the balance due for hardware it supplied to the general contractor. The plaintiff sent a letter to the general contractor stating that it was seeking payment and sent a copy of the notice to the surety. The statute reads that the party shall serve a "copy of the notice" on the contractor. Here, the plaintiff CT Page 6055-j mirrored what was required by the statute.
The court stated:
 The statutes having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with. On the other hand . . . 49-42 is a remedial statute enacted to provide security for workers and materials suppliers unable to avail themselves of the protection of a mechanic's lien. Because the statutory requirement of a bond is designed to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . such CT Page 6055-k statutory provisions are to be liberally construed.
(Internal quotations and citations omitted.) Id., 373.
The court then noted that, in the past, it has relied on strict construction of statutes when the issue was timeliness of notice, whereas it has relied upon liberal construction when determining whether certain subcontractors were eligible for coverage under the statute. Id. "In other words, if the statute itself imposes specific constraints, we have held these constraints to be mandatory; if the statute leaves room for construction, we have construed its requirements liberally in order to implement the statute's remedial purpose." Id., 367.
The court went on to hold that the plaintiff's notice to the contractor was sufficient because it substantially complied with the requirements and the general contractor had received actual notice within the proper time frame. Id., 367-377. CT Page 6055-l
In Wickes Mfg. v. Currier Electric Co., 25 Conn. App. 751,596 A.2d 1331 (1991), the Connecticut Appellate Court interpreted the suit limitations period contained in the "Little Miller Act." The limitations provision uses the same language as the provision at issue.
General Statutes 49-42(b) provides:
 "Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the judicial district where the contract was to be performed, irrespective of the amount in controversy of the suit, but no such suit may be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by the claimant." (emphasis added.) CT Page 6055-m
The plaintiff in Wickes, filed suit on January 26, 1983 seeking reimbursement for equipment furnished to the defendant general contractor in connection with a state contract for the installation of traffic control lights. The plaintiff in Wickes sought payment from the general contractor and from the surety who issued the bond required by General Statutes 49-41.
The plaintiff furnished equipment in July and August of 1980 and the final project was accepted by the state in March of 1982. In January of 1982, a state employee sought advice over the telephone concerning the system and in August 1982, the plaintiff sent the general contractor copies of the equipment schematics and service manuals, which had been sent previously to the contractor. Id., 757.
In its analysis, the Wickes court examined federal cases interpreting the limitations period contained in the federal Miller Act. Id., 758. The court concluded that the suit limitations period is not extended by: the correction CT Page 6055-n of defects; repair work; the furnishing of additional materials to make repairs; or by the furnishing of replacement parts. Id., 758.
The court also held that the phone advice and the resending of the manuals was not "material provided" as contemplated under General Statutes 49-42(b) and therefore the limitations period was not tolled and the plaintiff's claim against the surety was time barred. Id.
The language of General Statutes 49-42
contemplates materials supplied "in the prosecution of work" for which the bond was issued. The statute makes no distinction between materials supplied pursuant to a single contract, or pursuant to a series of contracts or upon an open account. Rather, the statute's focus is the construction project and whether the materials were incorporated into the project. A plain reading of General Statutes 49-42(a) reveals that notice of the claim must be sent within one hundred eighty days after the date the plaintiff furnished the last of the materials for the CT Page 6055-o particular construction project for which the bond is issued. (emphasis added.) This interpretation is consistent with Okee because it gives effect to the statute's remedial purpose. This is also consistent with Wickes as the Wickes court considered the construction project, and focused upon whether the materials were supplied for its completion, when computing the date from which the time period to file suit begins to run. The court deems the holdings in Noland v. Allied Contractors, supra; Russell v. Travelers Indemnity, supra; and U.S. for the use and benefit of J. A. Edwards 
Co. v. Bregman, supra, the more persuasive, and in accord with this analogy.
Furthermore, under this interpretation, as in Wickes, the one hundred eighty days would not be extended by the mere furnishing of additional materials for repair or replacement parts.[2] Here, the materials furnished under at least two of the last three invoices, those dated May 21 and May 29, 1990, cannot be considered trivial, were not shown to be for replacement parts, and were not initiated by the plaintiff but were ordered by Sarma, and were clearly CT Page 6055-p "furnished in the prosecution of the work."
The plaintiff sent its notice of claim on November 6, 1990. Disregarding in its entirety the September 9, 1990 invoice for $4.50, the plaintiff furnished the last of the materials to the project on May 29, 1990. The court finds that these materials were furnished to complete the construction project for which Federal Insurance Company issued the Labor and Material Payment bond.
The court concludes that as the plaintiff served its notice of claim on November 6, 1990 on the defendants, less than one hundred eighty days after May 29, 1990, the notice of claim for payment on the bond is timely. Accordingly, the court finds the issues for the plaintiff against both defendants.
Judgment may therefore enter for the plaintiff to recover the sum of $5,073.50 from the defendants together with interest. CT Page 6055-q
Teller, J.