[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT
STATEMENT OF THE CASE
The plaintiff, Kelvin Corporation, filed a four-count complaint on March 2, 1992. Named as defendants are William Foley d/b/a William Foley Sons, Inc. (Foley), Vinco Incorporated (Vinco), and Federal Insurance Company (Federal). The plaintiff's claims are based on work it alleges it performed in connection with a public construction project (the project). The plaintiff alleges that Vinco was the general contractor on the project, that Foley was a subcontractor, and that Federal supplied the payment bond for the project. The plaintiff alleges that it entered into a written agreement with Foley to supply Foley with services and materials for blasting and drilling rock on the project, and an oral agreement to supply a "water buffalo" (a large water tank) for Foley's use. The water buffalo was used to control dust created in the summer months by Foley's and later by Vinco's prosecution of the project. Foley defaulted on its contract with Vinco and was formally terminated from the project in March 1990. After leaving the job site because it was not paid, the plaintiff was requested to return by Vinco, and did so after being assured by Vinco that its expenses would be paid. The plaintiff alleges that it has not been paid by Vinco, and that its claim for payment was wrongfully denied by Federal, acting as the surety of Vinco's bond.
The first two counts of the complaint are against Foley and Vinco. The Third Count alleges that Federal breached its obligations under the bond to pay the plaintiff's claim; and the CT Page 11111 Fourth Count alleges that Federal's actions in failing to pay the bond violates the Connecticut Unfair Trade Practices Act ("CUTPA"), Sections 42-110a et seq. of the General Statutes.
Federal filed a "Motion To Dismiss and for Summary Judgment" on May 23, 1997 alleging that the court lacked jurisdiction because the plaintiff failed to filed its claims or institute suit within the statutory limitation periods.[1]
 DISCUSSION
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "Motions to dismiss are granted solely on jurisdictional grounds." Malasky v. Metal Products Corporation,44 Conn. App. 446, 452, 689 A.2d 1145 (1997).
"[O]nce the question of lack of jurisdiction is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." Figueroa v. C. S. Ball Bearing, 237 Conn. 1, 4,675 A.2d 845 (1996). "[W]here a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, . . . the time limitation is a substantive and jurisdictional prerequisite, which may be raised at any time, even by the court sua sponte, and may not be waived." (Internal quotation marks omitted.) Federal DepositInsurance Corp. v. Hillcrest Associates, 233 Conn. 153, 171,659 A.2d 138 (1995). Because Federal argues that the court lacks subject matter jurisdiction over the plaintiff's allegations in Count Three, the motion as to this count will be treated as a motion to dismiss. As to the CUTPA count, the court has jurisdiction over this claim and Federal's motion shall be treated as a motion for summary judgment.
Federal first argues that the plaintiff has failed to comply with the requirement under General Statutes § 49-42 (a)[2]
that it serve notice of its right to payment under the bond within one hundred eighty days after the date it performed the last of the labor or furnished the last of the material for which the claim is made. CT Page 11112
The plaintiff filed two claim notices. The first notice was dated March 12, 1991 and asserted a claim for $38,880.19. (Federal's Exhibit G). The amount sought in this claim is the exact amount for which the plaintiff billed Vinco in an invoice dated July 23, 1991. (Federal's Exhibit E). This invoice includes work for blasting performed under the written contract and indicates that the work was completed in November 1989.
Both Vinco and Federal requested the plaintiff to provide information to support and verify the March 12, 1990 claim. In its request, Federal expressly reserved its defenses under the bond, including its right to contest the timeliness of the claim.
In a letter dated July 23, 1991, the plaintiff responded to these requests by submitting another claim for $37,100.19. (Federal's Exhibit B-5). Among other items, this claim was accompanied by a "revised" invoice #1477 dated July 22, 1991. This revised invoice was identical to the initial invoice except that the revised invoice deleted $4080 in interest charges claimed as part of the first invoice; added a $2300 charge for the use of the water buffalo; and changed the completion date from November 1989 to May 20, 1991. Federal requested further supporting documentation for this revised invoice and after not receiving a response denied the entire claim.
Federal maintains that the plaintiff completed its work under the written contract in November 1989, and therefore, the claim notices filed in July 1990 and March 1991 were asserted well beyond the 180 day notice requirement of § 49-42 (a). Federal supports this argument by relying on the July 23, 1990 invoice and deposition testimony of Victor DeMaria, president of the plaintiff, indicating that all the work under the written contract was completed by November 1990. (Federal's Exhibits C, D and E).
In regard to the oral contract concerning the water buffalo, Federal argues that Vinco rented the water buffalo from the plaintiff only until the end of the summer in 1990. (Federal's Exhibits E, F). Federal acknowledges that the water buffalo remained at the project site after the summer of 1990, but contends that Vinco did not use it and requested the plaintiff to retrieve it. (Federal's Exhibits D, E).
Federal's second limitations argument is that the plaintiff failed to commence this suit within one year from the day the CT Page 11113 last labor was performed or material supplied by the plaintiff to Vinco as required by General Statutes § 49-42 (b).[3]
Federal argues that since the written contract for blasting was completed in November 1989 and the oral contract for the water buffalo was completed in August 1990, the institution of this suit in March 1992 was well beyond the one year limitation period.
Federal also seeks the dismissal of Count Four of the complaint alleging that Federal violated CUTPA because since Count Three must be dismissed on limitations grounds, judgment should enter in its favor on the dependent claim in Count Four. Federal also seeks attorney's fees under § 49-42, on the ground that the plaintiff's claims are without substantial basis in fact or law.
 I
"General Statutes . . . §§ 49-41 through 49-43, which provide for the furnishing of bonds guaranteeing payment (payment bonds) on public works construction projects, were enacted to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens." (Internal quotation marks omitted.)Blakeslee Arpaia Chapman, Inc. v. EI Constructors, Inc.,239 Conn. 708, 714, 687 A.2d 506 (1997). "This legislation, known as the `Little Miller Act,' was patterned after federal legislation popularly known as the Miller Act; 40 U.S.C. § 270a through 270d; and, therefore, [the Connecticut Supreme Court has] regularly consulted federal precedents to determine the proper scope of [the] statute." (Internal quotation marks omitted.) Id., 716. "The federal precedents, like [Connecticut's], counsel liberal construction of statutory requirements other than those relating to specific time constraints." Id. "The statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with." Okee Industries, Inc. v. National Grange Mutual InsuranceCo., 225 Conn. 367, 373, 623 A.2d 483 (1993).
As previously stated, § 49-47 (a) provides that a person furnishing labor or material under a contract where a payment bond is required under § 49-41 must enforce his right to payment by serving a notice of claim on the surety within 180 days "after the date on which he performed the last of the labor or furnished the last of the material for which the claim is CT Page 11114 made." C.G.S. § 49-42 (a). This language of § 49-42 (a) is similar to the corresponding provision of the Miller Act, 40 U.S.C. § 270b(a).[4] The notice provision of the Miller Act is designed to afford protection to the prime contractor by fixing the date beyond which, in the absence of notice, he will not be liable for the subcontractor's debt. . . ." NolandCompany, Inc. v. Allied Contractors, Inc. 273 F.2d 917, 920-21
(4th Cir. 1959).
The plaintiff's first claim notice in this case was dated March 12, 1991 and was for blasting work completed in November 1989. The second notice was dated July 23, 1991. The second notice revised the first one by adding a claim for use of the water buffalo. Thus the first question is whether the water buffalo's use on the projected ended in the summer of 1990, as Federal contends, or in the spring of 1991 as the plaintiff contends.
DeMaria testified that when Foley rented the water buffalo, the plaintiff only charged Foley for the months when the water buffalo was in use. (Federal's Exhibit C, Deposition, August 5, 1993, p. 53). The water buffalo was rented by Foley in June of 1989 through September of 1989. (Federal's Exhibit D, Deposition, November 4, 1993, pp. 28-29). DeMaria indicated that the water buffalo was not used during the winter because it was frozen, and that there were a total of eight months worth of bills charged for use of the water buffalo, all during the course of two summers. (Federal's Exhibit C, Deposition, August 5, 1993, p. 99; Exhibit D, Deposition, November 4, 1993, pp. 35-36). DeMaria also testified that Vinco requested to use the water buffalo on June 27, 1990. (Federal's Exhibit, Deposition, August 5, 1993, pp. 122, 125). Vinco was charged the same rate and eventually a lesser rate than that charged to Foley. (Federal's Exhibit C, Deposition, August 5, 1993, p. 131). Vinco rented the water buffalo during May, June, July, and August of 1990. (Federal's Exhibit D, Deposition, November 4, 1993, p. 37). Invoice no. 1461, dated May 21, 1991, reflects this rental arrangement. (Federal's Exhibit G). DeMaria testified that Vinco asked the plaintiff to remove the water buffalo in the spring of 1991, after the project was completed. (Federal's Exhibit C, Deposition, August 5, 1993, p. 123).
The evidence shows that there was an agreement between the plaintiff first with Foley and then with Vinco to supply a water buffalo to the site. The rental fee was calculated based on when CT Page 11115 the water buffalo was used, which was during the summer months. The water buffalo was used in the summers of 1989 and 1990, and remained on the site through the winter of 1990-91. Federal argues that because the water buffalo was not actually used after August of 1990, the rental agreement was terminated and the statute should begin to run from August 31, 1990. However, there was no indication that the water buffalo would not be needed in the summer of 1991 until the plaintiff was instructed by Vinco to pick up the water buffalo at the site in May of 1991. Until instructed to remove the water buffalo, the plaintiff appropriately left the water buffalo at the site for future use by Vinco under their agreement. The fact that Vinco determined that it did not need the water buffalo for the summer of 1991 because of the early completion of the project should not control the determination of when this water tank was last furnished for the project. The determinative factor is when the last of the materials are furnished, not when the project is completed or the materials are actually used. See United States for the Use ofHoneywell, Inc. v. A L Mechanical Contractors, Inc.,677 F.2d 383, 385 (4th Cir. 1982); United States for the Use and Benefitof Laborers' Pension Trust Fund — Detroit and Vicinity v. SafecoInsurance Company of America, 707 F. Sup. 286, 288 (E.D. Mich. 1988).
Furthermore, since the plaintiff only charged Vinco for the times when the water buffalo was actually used, it cannot be said that the plaintiff left the water buffalo at the site simply to run up rental charges over the winter. The evidence clearly indicates that the water buffalo was left at the site over the winter for the convenience of Vinco, rather than as a ploy by which the plaintiff could assure itself that its claims would not be barred by the tolling of the statute. Thus, Federal's characterization of the plaintiff leaving the water buffalo at the site as a unilateral discretionary act intended to postpone the running of the statute, as described in United States for theUse and Benefit of Gulf States Enterprises, Inc. v. R.R. Tway,Inc., 938 F.2d 583, 588-90 (5th Cir. 1991), is inappropriate. The plaintiff's decision to remove the water buffalo cannot truely be viewed as being discretionary until the plaintiff was notified by Vinco that the water buffalo was no longer needed for the project and should be removed. The Little Miller Act, like its federal counterpart, is "highly remedial in nature . . . [and] entitled to a liberal construction and application in order properly to effectuate the [legislative] intent to protect those whose labor and materials go into public projects." (Internal quotation marks CT Page 11116 omitted.) Blakeslee Arpaia Chapman, Inc. v. EI Constructors,Inc., supra, 239 Conn. 716.
The plaintiff's claim regarding the water buffalo "is a claim relating to materials and equipment actually furnished for and used in performance of the work covered by the subcontract, and hence contemplated in the bond, for which recovery is allowed."United States for the Use and Benefit of Wyatt Kipper v. RamsConstruction Co., 194 F. Sup. 379, 383 (D. Alas. 1961). The water buffalo, while not directly related to the written contract for blasting, still constitutes materials furnished, in that it was utilized by Foley and Vinco to complete the contract Vinco had with the state to construct the school building. See UnitedStates on Behalf of For the Use of Balf v. Casle Corp.,895 F. Sup. 420, 425 (D. Conn. 1995) (subcontractor may not recover on bond unless he delivers materials or performs labor called for by terms of the prime contract). The water buffalo contract was not entered into simply to correct defects or make repairs to the project after inspection in order to artificially extend the time for the running of the notice period. Id. See also WickesManufacturing Co. v. Currier Electric Co., 25 Conn. App. 751,752, 596 A.2d 1331 (1991) (the supplying of labor or materials to correct defects or make repairs after completion of the work does not toll the time period of § 49-42 (b)).
Federal further insists that the plaintiff has insufficiently pleaded any claim based on either the water buffalo or the July 23, 1991 notice. The plaintiff's allegations in this regard are not well presented in the complaint, but the pleadings and evidence produced by the parties are sufficient for the court to conclude that this claim is encompassed within the allegations and that the court has jurisdiction over this claim.
Thus, the court finds that the water buffalo was last furnished for use on the project in May 1991, making the July 23, 1991 notice of claim regarding the water buffalo timely. Similarly, the lawsuit instituted on March 12, 1992, was within one year from the last day the water buffalo was supplied, and therefore, the lawsuit regarding this item was also timely filed.
 II
The plaintiff's claim for the blasting work performed under the written contract stands on a different footing. In depositions, DeMaria testified that the invoice billed on July CT Page 11117 23, 1990 represented the bulk of the plaintiff's claims. (Federal's Exhibit D, Deposition, November 4, 1993, p. 13). DeMaria testified that the plaintiff completed the blasting work in late 1989, but that it supplied some other services into 1990. (Federal's Exhibit C, Deposition, August 5, 1993, p. 36). He also stated that no work was performed between the blasting work in November of 1989 and the submission of the July 23, 1990 invoice. (Federal's Exhibit C, Deposition, August 5, 1993, p. 110). He further indicated that the plaintiff completed the blasting work in November of 1989. (Federal's Exhibit C, Deposition, August 5, 1993, pp. 118, 143).
Thus the court finds that except for the work performed under the oral agreement regarding the water buffalo, all other work performed or materials provided by the plaintiff was completed during or prior to November 1989. The plaintiff argues that despite the completion of the written contract prior to November 30, 1989, its March 12, 1991 notice of claim should still be deemed as being timely. The plaintiff reasons that since the March 12, 1991 notice of claim was timely filed as to the water buffalo, all of its claims were timely since the water buffalo represents materials furnished within 180 days of the filing of this notice of claim. See C.G.S. § 49-42 (a).
No published Connecticut authority has been located expressly addressing this argument, and federal cases construing the Miller Act are split on this issue. See In United States for the Use andBenefit of Robert DeFilippis Crane Service Inc. v. William L.Crow Construction Co., 876 F. Sup. 647 (E.D.N.Y. 1993). The court in the William L. Crow Construction Co. case explained its view on this issue as follows:
 "If, for example, a construction equipment supplier enters into 10 contracts with a subcontractor to rent equipment for a public construction project over a five year period and receives no payment on the first contract, the court reads section 270b(a) to mean that the supplier would then have a `claim.' If, in this example, the supplier last furnished equipment required under the first contract on January 1, 1993, then section 270b(a) gives the supplier [180] days from that date in which to present its notice of claim. The supplier could not present its notice of claim based on this contract more than four and a half years later, even if the supplier continued to furnish equipment to the same subcontractor under subsequent contracts." CT Page 11118
Id. at 654; accord, Alaska Helicopters, Inc. v. Whirl-WideHelicopters, 406 F. Sup. 1008, 1011 (Ala. 1976) (noting that the while the language of 40 U.S.C. § 270b(a) contains a requirement that the time limit to file a notice of claim runs separately for each separate claim, such a requirement does not apply to the time limit for instituting suit under § 270b(b)).
This court concludes that the reasoning of William L. CrowConstruction Co., supra, provides the more persuasive construction of the statutory language at issue. Since federal precedents are consulted to determine the scope of Connecticut's Little Miller Act; see Blakeslee Arpaia Chapman, Inc. v. EIConstructors, Inc. supra, 239 Conn. 716; this court holds that under the Little Miller Act, the time period for filing a notice of claim begins to run from the last day services or materials are provided for each claim or contract so that the plaintiff cannot use the more recent materials supplied under the oral agreement for the water buffalo to provide a basis for filing a notice of claim for the blasting work and materials supplied under the separate, written contract. See United States For TheUse and Benefit of Robert DeFilippis Crane Service, Inc. v.William L. Crow Construction, Co., supra. Since the blasting work was completed in November 1989, the March 12, 1991 notice of claim for this work was beyond the 180 day requirement of § 49-42
and was untimely.
 III
The Fourth Count of the complaint alleges that Federal violated CUTPA. Federal seeks summary judgment in its favor on this count solely "to the extent the court dismisses [the plaintiff's] Third Count." As indicated above, the court has jurisdiction over plaintiff's claim under the Third Count regarding the water buffalo. Therefore, Federal's motion for summary judgment as to the plaintiff's CUTPA's claims shall be denied to the extent that the CUTPA claims relate to the water buffalo, but the motion shall be granted in all other respects.
 IV
Lastly, Federal seeks attorney fees under General Statutes § 49-42. The statute would allow recovery of attorney fees if the plaintiff's claim was without "substantial basis in fact or CT Page 11119 law." Federal's request for attorney fees is denied. As previously discussed, the plaintiff had a bona fide basis for asserting the claim for the water buffalo and the court has denied Federal's motion to dismiss this claim. As to the other claims regarding the blasting work under the written contract, a bona fide legal issue was presented about whether the continued presence of the water buffalo on the site and its availability for Vinco's use allowed these other claims to be asserted in a manner that satisfied the time periods of § 49-42. The federal authorities on this issue construing the Miller Act are split, and the parties did not cite and the court failed to locate any controlling Connecticut authority on this question under the Little Miller Act. Thus, the court cannot find that the plaintiff's claims were without substantial basis.
CONCLUSION
Therefore, as to Count Three, Federal's motion to dismiss is granted as to all claims asserted by the plaintiff except the claim regarding the water buffalo as asserted in the notice of claim dated March 12, 1991. Similarly, as to Count Four, Federal's motion for summary judgment is granted as to all claims asserted by the plaintiff except the claim relating to Federal's actions regarding the water buffalo as asserted in the notice of claim dated March 12, 1991. Federal's request for attorney fees under § 49-42 is denied. Federal's objection to the plaintiff's memorandum in opposition to Federal's motion to dismiss and for summary judgment is overruled.
Dated this 3rd day of October 1997.
Stevens, J.