[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 26, 1996
In this case the plaintiff, Summit Crane Company, supplied construction equipment for a state public works project, pursuant to the state contract a payment bond was issued. Rights under such a bond are determined by an analysis of § 49-42 of the general statutes Suffolk Construction Company was the general contractor on the job and Seaboard Surety Company issued a payment bond under General Statutes § 49-41. CT Page 5614
Summit Crane claims it was not paid for having supplied equipment to the job and has brought suit against Suffolk and Seaboard Surety in the third count. The latter two companies have moved for summary judgment and argue that Summit Crane cannot make a claim under the payment bond.
The tests to be applied on a motion for summary judgment are well known. If there is a genuine issue of material fact the court cannot resolve it because the nonmoving party is entitled to a trial for the resolution of such issues.
Here, at least from the court's perspective, the facts are not so much in dispute but the proper categorization and construction that should be given to the facts. As mentioned the defendants' claim § 49-42 does not provide the plaintiff with protection and they also claim that in any event Summit Crane failed to meet the notice requirement of the statute.
The first question presented is whether § 49-42, as it read when the plaintiff provided equipment to this job in the fall of 1992, can be said to provide protection to the plaintiff.
Our Supreme Court on several occasions has said that we should look for guidance on payment bond questions to federal court interpretations of the so-called Miller Act. Our act was modeled on the Miller Act and the wording of our act is borrowed from the federal act. Under these circumstances, it would only create confusion in the local construction industry if state and federal courts gave different interpretations to their respective payment bond acts; for cases saying federal precedent should be looked to by our courts, see Pittsburgh Plate Glass Co. v. Dahm,159 Conn. 563, 567 (1970), International Harvester Co. v. L.G.Defelice Sons, Inc., 151 Conn. 325, 331; American Masons'Supply Co. v. F. W. Brown Co., 174 Conn. 19, 226
(1978), held that §§ 49-41 and 49-42 of the General Statutes were intended by the legislature "to operate in general conformity with the federal statute, popularly known as the Miller Act, (40 U.S.C §§ 270a-270e)."
It is true, as the plaintiff claims, that it has been held that our payment bond statute should be given a liberal interpretation in light of its ameliorative purpose of protecting people and companies who actually supply labor and material to a job site and do not get paid. CT Page 5615
But the federal courts have held that under the Miller Act, Congress "intended the scope of protection of a payment bond to extend no further than to sub-subcontractors." JW Bateson Co. v.Board of Trustees, 434 U.S. 586, 591 (1977). This has been the law for over 50 years, see McEvoy Co. v. United States, 322 U.S. 102
at pp. 107-08 (1943). The Bateson court explicitly recognized its obligation "to construe the `highly remedial' Miller Act `liberally' . . . but felt constrained to give this interpretation by the language of the act and its conclusion that the word `subcontractor' has to be limited in meaning to one who contracts with a prime contractor." Id. At 434 U.S. p. 594.
Thus, the court cannot accept the plaintiff's argument that this court can refuse to apply the analysis used in Bateson andMcEvoy on the notion that "the tier analysis used by some courts is unfortunate." Our court explicitly followed McEvoy and held that the protections of our act only applied to suppliers of material that have a direct contractual relationship with a subcontractor, that is sub-subcontractors, and not suppliers to the latter. American Masons' Supply Co. v. FW Brown Co.,
174 Conn. At pp. 226-27. The court at page 227 gave its reasoning for such a position:
 The purpose of limiting the right of action upon the bond to only those having a direct contractual relationship with a subcontractor is to prevent the imposition of unlimited liability upon the prime contractor and his (sic) surety . . . While it is easy for the prime contractor to secure himself against by requiring the relatively few subcontractors to provide some type of security for the payment of those who contract directly with these subcontractors. "This method of protection is generally inadequate to cope with remote and undetermined liabilities incurred by an ordinary materialman who may be a manufacturer, a wholesaler or retailer."
The cases referred to in its brief by the plaintiff do not differ from this analysis but generally recognize that payment bonds protect sub-subcontractors; in other words, they adopt a so-called tier analysis. Tremack Co. v. Homestead Paving,582 So.2d 26 (Fla. 1991); Mai Steel Service v. Blake Construction Co.,981 F.2d 414 (CA9, 1992); U.S. for Use of Superior Insulation v.McKee, Inc., 702 F. Sup. 1298 (ND Tex, 1988). CT Page 5616
The question then becomes was the plaintiff a sub-contractor; did it supply its construction and crane services to a subcontractor? A reading of the First Count of the complaint directed against Continental Metalcraft and the Second Count directed against RS Welding, Inc., obviously admissions by the plaintiff, make clear that Suffolk was the principal contractor. RS Welding was a subcontractor, and Continental Metalcraft was a sub-subcontractor — in other words, "The plaintiff supplied services to the defendant, Continental Metalcraft. Inc., a subcontractor on the project for the benefit of the defendant, RS Welding" (par 5 of Second Count), also see Ex. B, attached to defendant's motion, from the plaintiff's general manager which sets forth in a letter to the surety the nature of the plaintiff's claim; the "Narrative" attached to the letter indicates the plaintiff was a so-called third tier supplier — it delivered its services to a sub-subcontractor, such a letter and the attached Narrative can be considered, along with the pleading to be an admission.
But the plaintiff maintains that in fact Continental Metalcraft is a subcontractor, and points to interrogatories submitted by the defendant. In one of the interrogatories Suffolk stated it paid Continental Metalcraft $2913 "for time and material work performed directly for Suffolk and not through RS." The claim by the plaintiff here is for some $15,009.91 and there is nothing to indicate that the work done "directly, for the general, Suffolk, was the same work or part: and parcel of the larger $15,000 claim. In any event, does the fact that Suffolk, the general, had Continental do some work directly for Suffolk make Continental a subcontractor for the purposes of this analysis? On the basis of this record the Court cannot reach this conclusion because there is no indication, for example, that in doing this $2913 work directly for Suffolk Continental Metalcraft used any services or material from the plaintiff Summit Crane. In other words, by any reading of this factual scenario it cannot be said that the plaintiff as to any portion of its claim is anything more than a third tier supplier as to any supplies and services for this job and it cannot be said to be a second tier supplier in certain aspects of the job for which it now also makes a claim and which might give it protection even as to its third tier claim, cf. American Mason's Supply Co. v. F.W. BrownCo., 174 Conn. At page 221 and 227 where the court seemed to permit a third tier supplier claim by the plaintiff because as to a portion of its claim it was a second tier supplier to a company that was clearly a subcontractor. CT Page 5617
On the third count then the defendant's motion for summary judgment is granted.
(2)
The defendant's claim that even if § 49-42 were interpreted to give protection to the plaintiff statutory Notice was not given so that a claim cannot be made under the payment bond.
Section 49-42 requires that notice be sent and says: "The notice of claim shall state with substantial accuracy the amount claimed, the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were supplied." The statute goes on to say that if the notice requirements of the statute are met: "a copy of such notice served within one hundred eighty days of the payment date provided for in subsection (a) of section 49-41a upon the surety that issued the bond and upon the contractor named as principle, shall satisfy the notice requirements of this section."
The defendant Suffolk says that on March 12, 1993 a claim under the payment bond was sent within the appropriate period to the surety, Seaboard but a copy of the claim letter was not sent to Suffolk, the general contractor. The defendants then cite language in Pittsburgh Plate Glass Co. v Dahm, 159 Conn. 563, 565
(1970), to the effect that the statute created the cause of action and set forth the procedure and thus "the mode of proceeding is mandatory and must be strictly complied with." InPittsburgh v. Plate Glass, the issue before the court, however, was not notice but "whether the plaintiff's action was brought within one year `after the date of final settlement of such contract' as required by § 49-42," id page 566.
The defendants do not claim at this juncture that the contents of the claim did not give the information necessary for adequate notice but argue notice was defective because a copy was not sent to the general contractor, Suffolk.
We are not dealing with sovereign immunity issues necessarily involved with the interpretation of statutes like § 13-149, the highway defect statute. The court in Okee Industries, Inc v.National Grange Mutual Ins. Co., 225 Conn. 367 (1993), discussed CT Page 5618 the notice provisions of § 49-42 and specifically dealt with the wording of the notice and whether it should fail because of being imperfectly worded. The Court said however: "Of particular relevance to the present case are the federal precedents that have relied on a standard of substantial performance rather than strict compliance when constructing statutory notice requirements dealing with the service of notice and with the contents of the notice" id at 225 Conn. Page 375. The claim the defendants make here is not the "nonsense" the plaintiff claims it to be but the plaintiff does point out that copies of letters sent to Continental Metalcraft were sent to Suffolk on February 26, 1993, March 9, 1993 and March 11, 1993. The February 26th letter does refer to the project and asserts the claim and it was sent to Continental Metalcraft so Suffolk when it got its copy knew the company against which the claim was made. Also each one of these letters asserts that unless payment was not received a claim would be made against the bond. The court in Okee Industries
said: "That the apparent function of the statutory requirement that the contractor be served with `a copy of the notice' to the surety is to alert the contractor of the surety's impending involvement in the fiscal management of the product," 225 Conn. At page 376.
Is that what was going on here and if that's the purpose of the notice to the general contractor wasn't that achieved by the three pre-March 12th letters referred to above?
This is a close question but under the circumstances as the court is presently aware of them, in a situation such as this, where notice was actually given to the surety and some notice of an impending claim and its nature was previously given to the general contractor, then the surety and contractor should not prevail on the lack of notice claim if there is no demonstrated prejudice. In any event, the court will not grant the motion on this lack of notice ground but does grant the defendants' motion for summary judgment on the grounds previously discussed.
CORRADINO, J.