## OKEE INDUSTRIES, INC. *v.* NATIONAL GRANGE MUTUAL INSURANCE COMPANY ET AL.
### (14583)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued February 9—decision released April 13, 1993

*John C. Yavis, Jr.,* with whom, on the brief, was *Mark D. Nielsen,* for the appellant (plaintiff).

*James N. Royster,* for the appellee (named defendant).

PETERS, C. J. The issue in this appeal is whether an unpaid subcontractor seeking to recover on a payment bond furnished for a public construction contract has adequately complied with the notice requirements contained in General Statutes § 49-42 (a).[1] Alleging non-payment for materials supplied to the worksite, the plaintiff, Okee Industries, Inc., doing business as Hardware Specialities, Inc. (subcontractor), brought an action against the defendant Jon Butler Building and Remodeling (general contractor) and the named defendant, National Grange Mutual Insurance Company (surety).[2] After a hearing, the trial court rendered summary

[1] General Statutes § 49-42 provides in relevant part: "ENFORCEMENT OF RIGHT TO PAYMENT ON BOND. SUIT ON BOND, PROCEDURE AND JUDGMENT. (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundred eighty days after the date on which he performed the last of the labor or furnished the last of the material for which the claim is made, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond. The notice of claim shall state with substantial accuracy the amount claimed, the name of the party for whom the labor was performed or to whom the materials were furnished and shall provide a detailed description of the bonded public project for which the labor or materials were provided. . . . The notices required under this section shall be served by registered or certified mail, postage prepaid in envelopes addressed to any office at which the surety, principal or claimant conducts his business, or in any manner in which civil process may be served. If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the superior court for such sums and prosecute the action to final execution and judgment. . . ."

[2] The first count of the complaint was an action against both defendants for breach of their respective contractual obligations. The second count of

judgment in favor of the surety, from which the subcontractor appealed to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c) and now reverse.

The trial court's memorandum of decision and the record establish the following facts. Pursuant to General Statutes § 49-41,[3] the surety executed a payment

the complaint was an action against the surety for allegedly engaging in unfair claim settlement practices in violation of General Statutes § 38a-816 (6) and in unfair trade practices in violation of General Statutes § 42-110b. In the trial court, the subcontractor conceded that it could not recover on the second count of its complaint if the first count were barred by its failure to comply with the notice requirements of General Statutes § 49-42. Because the trial court found that the subcontractor had failed to comply with these notice requirements, the trial court rendered summary judgment in favor of the surety. For this reason, this appeal addresses only the first count of the complaint.

[3] General Statutes § 49-41 provides: "PUBLIC STRUCTURES. BONDS FOR PROTECTION OF EMPLOYEES AND MATERIALMEN. (a) Before any contract exceeding twenty-five thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, except a design professional, as defined in section 4b-55, that person shall furnish to the state or the subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person, provided no such bond shall be required to be furnished in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than twenty-five thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars.

"(b) Nothing in this section or sections 49-41a to 49-43, inclusive, shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to the bond herein referred to, except that no such officer shall require a performance bond in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than twenty-five thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars."

bond for a state financed construction project in East Windsor, naming the general contractor as principal and designating the suppliers of labor and materials as the beneficiaries of the bond. According to its complaint, the subcontractor supplied hardware items for the project in accordance with its contract with the general contractor, but remains unpaid to the extent of $37,742.90.

After unsuccessfully demanding payment from the general contractor,[4] the subcontractor sent written notice of its claim to the surety on six separate occasions. Even though only one of these notices was sent by certified or registered mail, the notices were timely and adequately apprised the surety of the substance of the subcontractor's claim.[5] The surety refused to pay the subcontractor.

In the subcontractor's action against the surety for breach of the surety's obligations under the payment bond, the trial court concluded that the subcontractor was not entitled to enforce its right to payment under the bond because it had failed to serve timely notice on the general contractor, as required by § 49-42 (a). Because the statute requires a claimant to give proper notice both to the principal on the bond and to the surety, the court granted the surety's motion for summary judgment and denied the subcontractor's motion for partial summary judgment.

The subcontractor, in its appeal from the judgment, does not dispute that § 49-42 (a) makes compliance with the statutory notice requirements a precondition to its recovery on the surety bond. *American Masons' Supply Co.* v. *F. W. Brown Co.*, 174 Conn. 219, 224, 384 A.2d 378 (1978); *Pittsburgh Plate Glass Co.* v. *Dahm*,

---

[4] The general contractor filed for bankruptcy on December 4, 1991.

[5] The legal sufficiency of these notices to the surety is not an issue in this appeal.

159 Conn. 563, 565, 271 A.2d 55 (1970). The subcontractor's obligation to give notice to the general contractor of its claim on a payment bond, even if the subcontractor and the general contractor have a direct contractual relationship, was added by an amendment to the statute in 1987. Public Acts 1987, No. 87-345, § 2.[6] Accordingly, § 49-42 (a) now expressly provides that any "person who has furnished labor or material . . . may enforce his right to payment under the bond *by serving a notice of claim* within one hundred eighty days after the date on which he . . . furnished the last of the material for which the claim is made, *on the surety that issued the bond and a copy of the notice on the contractor named as principal* in the bond." (Emphasis added.) The statute thus permits the surety to assert as a defense to an action on the bond not only a lack of timely notice to the surety itself, but also a lack of "a copy of the notice" to the general contractor.

The issue before us, therefore, is whether the subcontractor, after having repeatedly notified the surety in writing of a claim for payment in the amount of $37,742.90, adequately gave "a copy of the notice" to the general contractor. The statutory requirement would have been met, on its face, if the subcontractor, in one of its timely written notices of claim to the surety, had appended a legend indicating that a copy was being sent to the general contractor, and had then proceeded to forward a copy as indicated. In this case, however, the subcontractor instead sent a letter that, although timely, was the mirror image of what the statute contemplates. On July 9, 1990, the subcontractor

---

[6] Number 87-345, § 2 of the 1987 Public Acts made a number of changes to General Statutes § 49-42. The legislative history of the amendment does not illuminate the reason for adding a requirement that the general contractor must be served, in all cases, with a copy of the notice of a claim to the surety.

wrote a letter to the general contractor, challenging the general contractor's calculation of the amount remaining unpaid and demanding immediate payment by the general contractor. At the bottom of this letter, the subcontractor appended a notation indicating that a copy was being sent to the surety.[7]

Whether the July 9, 1990 letter meets the statutory requirement that the general contractor be served with "a copy of the notice" that a claim is being asserted against the surety depends upon an assessment of how the letter fits into two somewhat conflicting lines of cases. On the one hand, as the surety notes, § 49-42 is a statutory cause of action that had no antecedents

---

[7] The text of the letter from the subcontractor to the general contractor reads as follows:

"HARDWARE SPECIALTIES, INC.
A Subsidiary of OKEE Industries, Inc.
P.O. Box 678, West Springfield, MA 01090

July 9, 1990

Jon Butler Building
50 Westford Avenue
Stafford Springs, CT 06706

Attn: Jon Butler

Re: State of Connecticut Dormitory
    South Windsor, CT

Dear Mr. Butler,

We are in receipt of your letter of 7-5-90.

In this letter you state that you will pay us a total sum of $18,000.00 in monthly installments of $5,000.00.

We disagree with the amount of $18,000.00. You owe us a total of $37,742.90. We have a signed purchase order and change order for a total of $52,600.00 with a credit of $1,180.00 bringing the total contract to $51,420.00. Payments of $13,677.10 have been made to date.

This leaves a total amount due of $37,742.[90]. We demand payment of this total in full immediately.

Sincerely,

/s/ Al Chapman

Al Chapman
Manager

cc: National Grange Mutual Insurance Company"

at common law. "The statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with." *Pittsburgh Plate Glass Co.* v. *Dahm,* supra, 565; *New Britain Lumber Co.* v. *American Surety Co.,* 113 Conn. 1, 7–8, 154 A. 147 (1931); *Wickes Mfg. Co.* v. *Currier Electric Co.,* 25 Conn. App. 751, 757, 596 A.2d 1331 (1991). On the other hand, as the subcontractor notes, § 49-42 is a remedial statute enacted to provide security for workers and materials suppliers unable to avail themselves of the protection of a mechanic's lien. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 477–79, 542 A.2d 692 (1988). Because "[t]he statutory requirement of a bond is designed to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . such statutory provisions are to be liberally construed." (Citations omitted; internal quotation marks omitted.) *American Masons' Supply Co.* v. *F. W. Brown Co.,* supra, 227; *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.,* 151 Conn. 325, 333, 197 A.2d 638 (1964).

We have not often applied maxims of strict construction and liberal construction to one and the same statute. As modern jurisprudence counsels, the explanation for this apparent paradox is found in an examination of the underlying fact patterns in the relevant cases. We have relied on the rule of strict construction when the issue was whether the claimant's notice complied with the specific time requirements of the statute. *Pittsburgh Plate Glass Co.* v. *Dahm,* supra, 566; *New Britain Lumber Co.* v. *American Surety Co.,* supra; *Wickes Mfg. Co.* v. *Currier Electric Co.,* supra, 759. We have, however, relied on the rule of liberal construction when the issue was the eligibility for statutory coverage of a particular class of subcontractors; *American Masons'*

*Supply Co.* v. *F. W. Brown Co.,* supra; or a particular type of supplier of materials. *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.,* supra, 333–36. In other words, if the statute itself imposes specific constraints, we have held these constraints to be mandatory; if the statute leaves room for construction, we have construed its requirements liberally in order to implement the statute's remedial purpose.

Because § 49-42 was patterned after federal legislation popularly known as the Miller Act; 40 U.S.C. §§ 270a through 270d; we have regularly consulted federal precedents to determine the proper scope of our statute. *American Masons' Supply Co.* v. *F. W. Brown Co.,* supra, 223–24; *Pittsburgh Plate Glass Co.* v. *Dahm,* supra, 567–68; *International Harvester Co.* v. *L. G. DeFelice & Son, Inc.,* supra, 332–34. The federal precedents, like our own, counsel liberal construction of statutory requirements other than those relating to specific time constraints. As the Supreme Court of the United States observed in *Fleisher Engineering & Construction Co.* v. *United States ex rel. Hallenbeck,* 311 U.S. 15, 18, 61 S. Ct. 81, 85 L. Ed. 12 (1940), "a requirement which is clearly made a condition precedent to the right to sue must be given effect, but in determining whether a provision is of that character the statute must be liberally construed so as to accomplish its purpose."

Following *Fleischer,* the lower federal courts, except in cases involving the timeliness of notice, have eschewed the rule of strict construction.[8] As the court

---

[8] The cases on which the surety relies in urging the applicability of a rule of strict construction in this case are not to the contrary. See *United States ex rel. General Electric Co.* v. *H. I. Lewis Construction Co.,* 375 F.2d 194, 201 (2d Cir. 1967) (timeliness of notice case); *United States ex rel. Old Dominion Iron & Steel Corporation* v. *Massachusetts Bonding & Ins. Co.,* 272 F.2d 73, 75–76 (3d Cir. 1959) (finding of insufficient notice because supplier took *no* action to protect his interests under the Miller Act, 40 U.S.C. § 270b);

observed in *United States ex rel. Hopper Bros. Quarries* v. *Peerless Casualty Co.*, 255 F.2d 137, 143 (8th Cir.), cert. denied, 358 U.S. 831, 79 S. Ct. 51, 3 L. Ed. 2d 69 (1958): "It may be that Congress thought the procedural requirements it prescribed for laborers and materialmen to enforce the right to sue for their pay which is accorded them by the Miller Act were so plain, simple, and easy to comply with that there would seldom be questions about them. But experience is to the contrary and the courts are continually called on to determine whether one deviation or another from the strict letter of the Act necessitates denial of the protection to laborers and materialmen, which the Act aims to provide. The doctrine to which the courts are unanimously committed is that the protection of the laborers and materialmen is the dominant purpose of the Act and a liberal construction of its procedural provisions must be resorted to when necessary to effectuate that purpose."

Of specific relevance to the present case are the federal precedents that have relied on a standard of substantial performance rather than strict compliance when construing statutory notice requirements dealing with the service of notice and with the contents of notice. *Fleischer* held that the statutory requirement for service of notice should not be enforced in light of undisputed evidence that the notice had actually been given and received. *Fleisher Engineering & Construction Co.* v. *United States ex rel. Hallenbeck*, supra, 19; see also *Coffee* v. *United States ex rel. Gordon*, 157 F.2d 968, 969–70 (5th Cir. 1946) (delivery effective if by hand rather than by mail). Numerous decisions of federal

*Bowden* v. *United States ex rel. Malloy*, 239 F.2d 572, 577–78 (9th Cir. 1956), cert. denied, 353 U.S. 957, 77 S. Ct. 864, 1 L. Ed. 2d 909 (1957) (finding of insufficient notice because supplier gave *no* notice to the general contractor, but instead relied on notice provided by another subcontractor for whom the supplier had provided equipment).

courts of appeals have similarly held a timely written notice to be sufficient despite technical deficiencies in its contents if notice in fact was actually given and received. See, e.g., *United States ex rel. San Joaquin Blocklite* v. *Lloyd E. Tull, Inc.*, 770 F.2d 862, 865–66 (9th Cir. 1985) (joint construction curing defects in two separately deficient letters); *United States ex rel. Honeywell, Inc.* v. *A & L Mechanical Contractors, Inc.*, 677 F.2d 383, 386 (4th Cir. 1982) (contents of notice sufficient if "substantially accurate"); *United States ex rel. Kelly-Mohrhusen Co.* v. *Merle A. Patnode Co.*, 457 F.2d 116, 117 (7th Cir. 1972) (verbal communication augmenting deficient written notice); *United States ex rel. Jinks Lumber Co.* v. *Federal Ins. Co.*, 452 F.2d 485, 488 (5th Cir. 1971) (joint construction curing two incomplete letters); *Liles Construction Co.* v. *United States ex rel. Stabler Paint Mfg. Co.*, 415 F.2d 889, 891 (5th Cir. 1969) (same).

In light of the federal cases adopting a liberal construction of statutory requirements relating to notices that, although timely, are imperfectly worded, we conclude that the subcontractor complied with the notice requirements of § 49-42 (a) in the circumstances of this case. The apparent function of the statutory requirement that the contractor be served with "a copy of the notice" to the surety is to alert the contractor of the surety's impending involvement in the fiscal management of the project. The adequacy of the notice-giving function of the July 9, 1990 letter was confirmed in this case by conversations held on August 2, 1990, within the statutory 180 day notice period, at a meeting between representatives of all three parties. At this meeting, the general contractor manifested its awareness of the fact that a notice of a claim had been given to the surety. The fact that the general contractor had received actual notice at the proper time persuades us that the imperfections of the letter fall within the cat-

egory of deviations that are insubstantial in the absence of demonstrated prejudice. See *Fleisher Engineering & Construction Co.* v. *United States ex rel. Hallenbeck,* supra; *United States ex rel. Kelly-Mohrhusen Co.* v. *Merle A. Patnode Co.,* supra; *School Board of Palm Beach County ex rel. Major Electrical Supplies of Stuart, Inc.* v. *Vincent J. Fasano, Inc.,* 417 So. 2d 1063, 1066 (Fla. App. 1982); *Keller Supply Co.* v. *Lydig Construction Co.,* 57 Wash. App. 594, 599–600, 789 P.2d 788 (1990).

Our decision to permit a subcontractor to sue on a surety bond despite its failure to comply precisely with the notice requirements of § 49-42 (a) is consistent with the emerging law elsewhere. We have used a substantial compliance test to assess the sufficiency of the contents of a statutory notice under other remedial statutes, such as our Workers' Compensation Act, General Statutes § 31-294; see, e.g., *Dubois* v. *General Dynamics Corporation,* 222 Conn. 62, 67, 607 A.2d 431 (1992). Furthermore, the legislature has recently adopted revisions to article 3 of the Uniform Commercial Code designed to limit the ability of a surety, in the absence of a showing of prejudice, to avoid paying its obligations under the bond by relying on insubstantial deviations from the contractual relationships between the underlying parties.[9] Although article 3 governs only those suretyship transactions that arise in the context of parties to a negotiable instrument; see General Statutes § 42a-3-102; its provisions are being seriously considered as the basis for broader proposals for a new Restatement of the Law of Suretyship.[10]

---

[9] Compare General Statutes § 42a-3-605 with General Statutes (Rev. to 1991) § 42a-3-606.

[10] Restatement, Suretyship §§ 33, 35–39 (Council Draft No. 2, 1992); see also Restatement, Security §§ 128–29 (1941) (permitting a compensated surety to assert suretyship defenses only to the extent that it has suffered a loss because of the conduct of the underlying parties).

The subcontractor in this case is suing to recover from the surety under the precise circumstances for which § 49-42 was enacted. Unless the subcontractor can pursue its remedy on the surety bond, its contribution to a public works project will remain uncompensated because of the general contractor's bankruptcy. The surety was paid to provide security against that very risk. In the absence of specific statutory instructions to the contrary, we conclude that the subcontractor's insubstantial deviation from the notice requirements of § 49-42 does not defeat its right to look to the security that the legislature intended to provide for laborers and materials suppliers at public worksites.

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other justices concurred.