[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE #111
The plaintiffs, Northeast Waste Systems, Inc. and Automated Salvage Transport, Inc filed an amended complaint on April 8, 1999 alleging, inter alia, that the defendants[1] Stamford Wrecking Co. and its surety, U.S. Fidelity Guaranty, refused to pay a claim by the plaintiffs in the amount of $100,969. Count five alleges that Northeast Waste Systems, Inc. entered into an oral contract with Connecticut Abatement Technologies, Inc. for the removal and disposal of construction debris at 13 Church Street, New Haven, a public building site, in consideration of $100,394.[2] Northeast Waste Systems, Inc. also alleges that it entered into a contract with Automated Salvage Transport, Inc., its subsidiary, to assist in the performance of the oral contract. The plaintiffs further allege that Stamford Wrecking Co., as the general contractor, and U.S. Fidelity Guaranty entered into a payment and/or performance bond contract with U.S. Fidelity Guaranty acting as surety. The plaintiffs allege that Stamford Wrecking refused to pay upon written notice the sum of $63,469 and upon oral notice the additional sum of $37,500.
Count six incorporates the plaintiffs' allegations regarding the parties' contractual relations as set forth above and further alleges that U.S. Fidelity Guaranty refused to pay upon written notice the sum of $63,469 and upon oral notice the additional sum of $37,500. The plaintiffs attached to the revised complaint a copy of the "Proof of Claim" which Northeast Waste Systems, Inc. submitted to U.S. Fidelity Guaranty and of which a copy was mailed to Stamford Wrecking. Identified as "Exhibit A" in the revised complaint, the "Proof of Claim" includes the following:
THE CITY OF NEW HAVEN. STAMFORD WRECKING CO. AAIS PETCO (IV) LLC. INCOR GROUP
"That, CONN ABATEMENT TECH INC ABCON, hereinafter called Contractor, was at and before the filing of this Proof of Claim, and still CT Page 7864 is, justly and truly indebted to Claimant, in the sum of $63,496.00. . . ."
On April 16, 1999, the defendants, Stamford Wrecking Co. and U.S. Fidelity Guaranty, filed a motion to strike counts five and six of the plaintiffs' revised complaint. The defendants seek to strike counts five and six on the grounds that a third tier subcontractor has no right of action on a bond against a general contractor and its surety and that the amount of the claim is limited to the amount set forth in the written notice of claim. In their supporting memorandum, the defendants argue that the plaintiffs are third tier subcontractors and as such have no right of action under General Statutes § 49-41 et seq. Secondly, the defendants argue that counts five and six should be stricken because General Statutes § 49-42 limits the amount of a claim in an action against a general contractor and its surety to the amount stated in the written notice of claim.
As required by Practice Book § 10-42, the defendants have filed a memorandum in support of their motion to strike, and the plaintiffs have timely filed a memorandum in opposition.
"The purpose of a motion to strike is to [challenge] . . . the legal sufficiency of the allegations [in the complaint] to state a claim upon which relief can be granted." Peter-Michael v. SeaShell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action."Napoletano v. CIGNA Healthcare of Connecticut, Inc.,238 Conn. 216, 232-33, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103,
117 S.Ct. 1106, 137 L.Ed.2d 308 (1997). In ruling on the motion to strike, the court is limited to the allegations in the complaint, which must be taken as true; Waters v. Autuori,236 Conn. 820, 822, 676 A.2d 357 (1996); and to considering the grounds specified in the motion to strike. Meredith v. PoliceCommission, 182 Conn. 138, 140, 438 A.2d 27 (1980).
The defendants, in their memorandum in support of the motion to strike, claim that the plaintiffs, as a third tier subcontractor, do not have a right of action under § 49-42. The defendants argue that the plaintiffs have "dealt with a subcontractor of a subcontractor of Stamford Wrecking, the prime contractor on the job." Referring to "Exhibit A" of the plaintiffs' revised complaint, the defendants note that CT Page 7865 AAIS/PETCO, LLC was the first tier subcontractor, while Connecticut Abatement Technologies and Bruce Black d/b/a Abcon, with whom the plaintiffs contracted, were the second tier subcontractor. The plaintiffs, in their memorandum in opposition to the motion to strike, respond that General Statutes §49-41 [et seq.] is remedial in nature and should be construed liberally to affect its purpose of protecting "laborers and suppliers on public projects."
Section 49-42 (a) provides in relevant part: "Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond upon giving written notice of claim as provided in this section." "[T]he right of action under a payment bond is statutorily limited under § 49-42 (a) to those having a direct contractual relationship with a project contractor or subcontractor in order to prevent the imposition of unlimited liability upon the prime contractor and his surety.'" (Internal quotation marks omitted.) Dysart Corp. v. SeaboardSurety Co., 240 Conn. 10, 19, 688 A.2d 306 (1997), quotingAmerican Masons' Supply Co. V.F.W. Brown Co., 174 Conn. 219,227, 384 A.2d 378 (1978). Section 49-42 is known as the Little Miller Act, and "was patterned after federal legislation popularly known as the Miller Act; 40 U.S.C. § 270a through 270d; . . . [Connecticut courts] have regularly consulted federal precedents to determine the proper scope of our statute."Blakeslee Arpaia Chapman, Inc. v. El Construction, Inc.,239 Conn. 708, 716, 687 A.2d 506 (1997).
The federal courts have interpreted the word "subcontractor" under the Miller Act; 40 U.S.C. § 27Gb[3] to mean "one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." (Internal quotation marks omitted.) United States v. Leon PerlinCo., Inc., 680 F.2d 340, 341 (4th Cir. 1982); see also J.W.Bateson Co. v. Board of Trustees, 434 U.S. 586, 590,98 S.Ct. 873, 55 L.Ed.2d 50 (1978). "Subcontractor" as used in § 49-42
has been similarly defined. American Masons' Supply v. F. W.Brown Co., supra, 174 Conn. 226 (same definition of "subcontractor" under § 49-42, in accordance with the federal definition in Clifford F. MacEvoy Co. v. United States,322 U.S. 102, 109, 64 S.Ct. 890, 88 L.Ed. 1163 (1944)). "[T]he scope of protection of a payment bond [under the Miller Act extends] no further than to sub-subcontractors." J. W. Bateson v. Board ofCT Page 7866Trustees, supra, 434 U.S. 591. Similarly, an action on the bond under § 49-42 is limited to individuals "having a direct contractual relationship with a subcontractor." American Masons'Supply Co. v. F. W. Brown Co., supra, 174 Conn. 227. "[T]he protections of our act only apply to suppliers of material that have a direct contractual relationship with a subcontractor, that is sub-subcontractor, and not suppliers of the latter." SummitCrane Co. v. Continental Metalcraft, Superior Court, judicial district of New Haven, Docket No. 035564 (September 26, 1996, Corradino, 1.) (17 Conn. L. Rptr. 651, 652); contra SemcoManufacturing v. B-G Mechanical Contractors, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 522990 (April 22, 1994, Hale, S.T.R.) (allowing a supplier of a sub-subcontractor to recover on the basis that § 49-42 does not limit recovery to second tier subcontractors). Therefore, a right of action under § 49-42 extends only as far as sub-subcontractors having a direct contractual relationship with a subcontractor of the prime contractor.
The defendants' motion to strike on the ground that the plaintiffs are a third tier contractor without a right of action under § 49-42 should be denied because the plaintiffs' position in the chain of contractual relations cannot be determined by an examination of the revised complaint. Allegations concerning the plaintiffs' contractual relationships with the defendants are limited to the following: "the plaintiff Northeast Waste Systems, Inc. and the defendant Connecticut Abatement Technologies, Inc. entered into an oral agreement for the removal and disposal by the plaintiff of asbestos and other construction debris. . . ." (Revised Complaint, Counts 5 6, ¶ 7.); "the defendant Stamford Wrecking Company was the general contractor for the demolition and removal of a public building . . . ." (Revised Complaint, Counts 5 6, ¶ 12.); and "the defendant Stamford Wrecking Company, as principal, entered into a payment and/or performance bond with the defendant United States Fidelity and Guaranty, as surety, for services to be performed at the site of the public building located at and known at 13 Church Street, New Haven, Connecticut." (Revised Complaint, Counts 5 
6, ¶ 13.) The plaintiffs have failed to plead their contractual relation to the defendants and the contractual relation between Connecticut Abatement Technologies, Bruce Black d/b/a Abcon and Stamford Wrecking.
The "Proof of Claim" which the plaintiffs attached as "Exhibit A" does not provide additional information regarding the CT Page 7867 contractual relations of the parties. Instead, it merely lists various "contractors" without delineating how the parties contractually relate to one another.
The defendants also move to strike counts five and six on the ground that § 49-42 limits a claim on the bond to the amount set forth in the written notice of claim. The plaintiffs respond that "the manner of providing notice has been the subject of liberal construction" and that "the defendants do not dispute the adequacy of the notice other than the amount delineated therein." Section 49-42 (a) provides in relevant part: "any person who performed work or supplied materials . . . who does not receive full payment for such work . . . may enforce his right to payment under the bond by serving a notice of claim on the surety that issued the bond and a copy of such notice to the contractor named as principal in the bond . . . The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. . . ."
"[Section] 49-42 is a statutory cause of action that had no antecedents at common law. The statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with." (Internal quotation marks omitted.) Okee Industries, Inc. v. NationalGrange Mutual Insurance Co., 225 Conn. 367, 372-73, 623 A.2d 483
(1993). "[Section] 49-42 makes compliance with the statutory notice requirements a precondition to its recovery on the surety bond." Id., 370. Nevertheless, the Connecticut Supreme Court counsels "[b]ecause [t]he statutory requirement of a bond is designed to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . such statutory provisions are to be liberally construed." (Internal quotation marks omitted.) Okee Industries,Inc. v. National Grange Mutual Insurance Co., supra,225 Conn. 373; see also Blakeslee Arpaia Chapman, Inc. v. El Constructors,Inc., supra, 239 Conn. 716.
Again, Connecticut looks to federal decisions interpreting the Miller Act to determine the proper scope of its own statute.Blakeslee Arpala Chapman, Inc. v. El Constructors, Inc., supra,239 Conn. 716. "The federal precedents, like [Connecticut's], counsel liberal construction of statutory requirements other than CT Page 7868 those relating to specific time constraints." Id. Although the statutorily defined time constraints of § 49-42 are strictly construed; Id.; Connecticut and federal courts employ a "standard of substantial performance rather than strict compliance when construing statutory notice requirements dealing with the service of notice and with the contents of notice." Id., 375 (claim allowed where principal contractor received actual notice but not "a copy of the notice" as prescribed under § 49-42); see alsoKMK Insulation, Inc. v. A. Prete Son Construction Co.,49 Conn. App. 522, 715 A.2d 799 (1998) (notices referenced inaccurate names as the party for which the labor was performed); HoustonFire and Casualty Insurance Co. v. United States, 217 F.2d 727
(5th Cir. 1954) (oral notice of claim against subcontractor to the principal contractor and written acknowledgment and demand for payment constitute sufficient notice); Liles ConstructionCo., Inc. v. United States, 415 F.2d 889 (5th Cir. 1969) (overestimate of amount due was substantially accurate); UnitedStates v. Merle A. Patnode Co., 457 F.2d 116 (7th Cir. 1972) (oral notice of subcontractor's name as the party for which the labor was performed and written notice which failed to reference subcontractor's name together are sufficient notice under Miller Act); United States v. A L Mechanical Contractors, Inc.,677 F.2d 383 (4th Cir. 1982) (notice stating amount owed substantially accurate though different than amounts stated in previous two notices); United States v. Lloyd E. Tull. Inc.,770 F.2d 862 (9th Cir. 1985) (two letters read together constitute sufficient notice to general contractor where only one letter stated amount owed and second letter requested payment by prime contractor); cf. Grinnell Fire Protection Systems Co. v. HartfordFire Insurance Co., Superior Court, judicial district of Danbury, Docket No. 322081 (November 1, 1996, Moraghan, J.) (failure to provide written notice of claim on surety to general contractor is fatal). Thus, Connecticut and federal courts have "held a timely written notice to be sufficient despite technical deficiencies in its contents if notice in fact was actually given and received." Okee Industries, Inc. v. National Grange MutualInsurance Co., supra, 225 Conn. 376.
In essence, "[t]he written notice and accompanying oral statements must inform the general contractor, expressly or impliedly, that the supplier is looking to the general contractor for payment so that it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." (Internal quotation marks F omitted.) Maccaferri Gabions, Inc. v.Dynateria Inc., 91 F.3d 1431, 1437, (11th Cir. 1996); see also CT Page 7869United States v. Great American Insurance Co., 537 F.2d 222, 223
(5th Cir. 1976); United States v. Altech, Inc., 929 F.2d 1089,1093 (5th Cir. 1991).
The defendants' motion to strike on the ground that "the amount of the claim against the general contractor and its surety is limited [under § 49-42] to the amount set forth in the written notice of claim under oath" should be denied because the courts require only substantial compliance with the statute's content of notice requirements. Furthermore, the Connecticut Supreme Court has counseled that the language of § 49-42
should be liberally construed so as not to defeat the purposes of the statute. The plaintiffs have alleged the contents of their notice to the defendants as follows: "On or about February 4, 1998, the plaintiffs provided notice of a claim in the amount of $63,496.00 to the [defendants], by certified mail, return receipt requested . . ."; (Revised Complaint, Counts 5 6, ¶ 14.); and "[s]ometime thereafter the plaintiffs orally notified the [defendants] that the additional sum of $37,500.00 was due for services provided." (Revised Complaint, Counts 5 6, ¶ 15.)
The plaintiffs' written notice or Proof of Claim and the plaintiffs' allegations that the defendants were orally notified about an additional amount due, when read together, satisfy the statutory requirement that notice be given in a manner that "it plainly appears that the nature and state of the indebtedness was brought home to the general contractor." Maccaferri Gabions, Inc.v. Dynateria Inc., supra, 91 F.3d 1475. Disagreements about the amount owed and discrepancies between the amount due stated in the written and oral notices and in the revised complaint are issues of fact and not issues of law. See United States v. A LMechanical Contractors, Inc., 677 F.2d 383, 386-87 ("if in the resolution of that dispute [the plaintiff is] found to be due something less than its claim, the notice may still have been substantially accurate, for [the Miller Act] does not require precision").
Accordingly, the motion to strike is denied.
Fracasse, J.