[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action by a subcontractor to recover for sums due under two separate municipal construction contracts, the plaintiff makes claim against the prime contractor (hereinafter "the contractor") for breach of contract and unjust enrichment and against the surety under each payment bond issued to support the contract pursuant to General Statutes. §49-41a and § 49-42, known as the "Little Miller Act".[1]
The dispositive issue in this case grows out of the proper interpretation of the terms of § 49-42. The plaintiff alleges (a) that it gave notice of its claim to the contractor and to the surety in accordance with the requirements of § 49-42(a), which the contractor denies; and (b) that the surety did not give notice of denial of liability or pay any portion of the claim as mandated by the statute.
The facts necessary for a resolution of these issues will be set forth as each issue is discussed.
I. Notice to Surety By Subcontractor
CT Page 15915
On March 4, 1997, within the time specified in § 49-42(a) the plaintiff gave notice of its claim to the surety by sending individual letters by certified mail, return receipt requested, stating the amount of its claim for the balance due under each of the two contracts, i.e. $14,467.54 for the North Street Elementary School job, and $5,761.99 for the Old Greenwich Elementary School job. Neither defendant disputes the legal sufficiency of the contents of these letters. The surety acknowledged receipt of the notices of claim through its letter dated March 27, 1997 but the contractor denies ever having received copies of the notices from the subcontractor/plaintiff.
The letters in question each contain a legend at the bottom which indicates that copies were sent to ten different parties, including the contractor. The plaintiff, however, produced return receipts for certified mailing (green cards) for only four of the ten to whom copies were mailed, not including the contractor. Nevertheless, the plaintiff's principal, Mr. Jorge Barreira testified that he had received signed return receipts from the contractor but mislaid them and has been unable to locate them. The court credits Mr. Barreira's testimony not only because it finds it credible but also because (i) he produced the other return receipts which correspond with the names of the persons shown on the cc legend on the letter; (ii) the contractor's name was listed on the top of the list of ten, (iii) he produced each of the two return receipts from one of the ten, Fletcher Thompson Architects, and (iv) each of the receipts was dated either March 13 or 14, 1997.
Federal precedents make compliance with the statutory notice requirement of § 49-42(a) a precondition to the plaintiff's recovery on the surety bond. American Masons' Supply Co. v. F. W. Brown Co.,174 Conn. 219, 224 (1978). In Okee Industries v. National Grain MutualInsurance Co., 225 Conn. 367, 371 (1993) our Supreme Court hypothesized compliance with the notice requirement had the subcontractor "appended a legend indicating that a copy [of the notice] was being sent to the contractor and had then proceeded to forward a copy as indicated." In fact, the contractor in that case sent notice to the contractor by regular mail at a later date in a different letter from that, which notified the surety. The court deemed this notice to constitute compliance, though not technically and strictly adhering to the letter of the statute. Likewise, this court holds that the plaintiff complied with the contractor-notice requirement of the statute.
II. Notice to Subcontractor by Surety
As stated above, the surety does not deny receiving letters from the subcontractor which asserted claims under both the North Street and Old Greenwich contracts. Likewise, there is no dispute that the surety CT Page 15916 received these letters on March 17, 1997 and sent its notice of denial to the subcontractor on June 26, 1997, clearly more than the 90 days prescribed by the statute. The plaintiff argues that the surety's failure to pay or deny the claim by written notice as required by the statute entitles it to judgment. The defendant surety, on the other hand, argues that the 90 days did not begin to run until the plaintiff completed and filed with the defendant a proof of claim under oath which would then permit it to commence its investigation.
The relevant portion of § 49-42 provides as follows:
 The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. If the content of notice prepared in accordance with subsection (b) of section 49-41a complies with the requirements of this action, a copy of such notice, served within one hundred eighty days of the payment date provided for in section (a)of section 49-41a upon the surety that issued the bond and upon the contractor named as principal in the bond, shall satisfy the notice requirements of this section.
 Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute. and shall serve a notice on the claimant denying liability for any unpaid portion of the claim. The notices required under this action shall be served by registered or certified mail, postage prepaid in envelopes addressed to any office at which the surety, principal or claimant conducts his business, or in any manner in which civil process may be served. If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment. (Emphasis added.)
Once again, relying on federal precedent construing the federal Miller Act, our Supreme Court has adopted a "substantial performance rather than a strict compliance test when construing statutory notice requirements CT Page 15917 dealing with the service of notice and with the contents of notice." OkeeIndustries v. National Grain Mutual Insurance Co., supra at 375. An examination of both notices of claim, reveals that they state with substantial accuracy the amount claimed, the name of the party for whom the work was performed and a detailed description of the bonded project. Nothing more is required by the statute. There is no authority in the statute or in the case law for a surety to delay commencement of the 90 day claim assessment period until receipt of a proof of claim under oath which it has designed for its own administrative purpose.
The next issue is whether the failure of the surety to act upon the subcontractor's notice of claim within the prescribed 90 ninety period is mandatory or directory. The court begins by noting that there is no corresponding provision in the federal Miller Act and so there is no federal case law to draw upon as an aid in construing the provision. Nor is there any Connecticut Appellate precedent to guide the court. Thus, analysis of the provision must be undertaken on the basis of well established principles of statutory construction.
"The process of statutory interpretation involves a reasoned search for the intention of the legislature . . . in other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; Internal quotation marks omitted.) Willoughby v. NewHaven, 254 Conn. 404, 410 (2000). "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Citations omitted; Internal quotation marks omitted.) Id., 422. [I]t is a well established principle that statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant. . . ." (Internal quotation marks omitted. ) Bridgeport Hospital v. Commission on Human Rights andOpportunities, 232 Conn. 91, 100-101 (1995).
In this case, the plaintiff argues that the word "shall" in the statute governing the time limit set for the surety to make payment or deny a subcontractor's claim is mandatory. The plaintiff further argues that the surety's failure to either pay or deny either claim within that 90 day period gives the plaintiff an automatic right to the amount claimed, whether disputed or undisputed. In response, the defendant argues that the legislature did not intend such a draconian result, and therefore, CT Page 15918 the word "shall" should be interpreted as directory rather than mandatory.
The legislative history reveals that when the statute was amended in 1987, the legislature added, inter alia a section which allows either party to recover attorneys fees if the court, in its discretion, finds that "either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in law or fact." The legislative history reveals that the legislature considered the awarding of attorneys fees as a deterrent to the surety's denial of undisputed claims. 30 H.R. PROC. PT. 19, 1987 SESS., P. 7071-72. Therefore, if a surety fails to pay undisputed claims within 90 days, the court can award the claimant attorneys fees if the reason for non payment has no substantial basis in fact or in law. However, in this case, the court is satisfied that all of the plaintiff's claims are subject to a good faith dispute and therefore, the surety's defense had a substantial basis in both fact and law. The precise issue therefore is, what is the consequence for a surety who fails to send the claimant a notice of denial within 90 days when all of the claims are subject to a good faith dispute?
"In order to determine whether a statute's provisions are mandatory [the court] has traditionally looked beyond the use of the word "shall" and has examined the statute's essential purpose . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Furthermore, if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory." (Citations omitted; internal quotations marks omitted.) United Illuminating Co. v.New Haven, 240 Conn. 422, 465-66 (1997).
The legislative history reveals that in 1987 the legislature further amended the statute by adding the provision requiring the surety either to pay or deny within 90 days. According to Representative Looney, the new procedure "addresses the problem of collecting under a payment bond. . . . This bill authorizes the subcontractor or the sub subcontractor who has not been paid within 90 days to collect directly from the company that provided the contractor's payment bond, going to court only if the bond company fails to satisfy his claim." 30 H.R. PROC. PT. 19, 1987 CT Page 15919 SESS. P. 7069. Further, Senator Maloney commented that "[t]he amendment revises the procedures for claims under materialmen's bonds. What it does is in effect require that non-disputed claims be paid, and only the contested portion of the claim would go to litigation. This will simplify the. while, first of all, eliminate a number of cases that otherwise might be brought. And will generally improve the orderliness of the materialmen's bonds procedure." 30 S. PROC. PT. 4, 1987 SESS., P. 1468. The amendment did not provide, nor does the statute in its present configuration provide, an explicit consequence for a surety's failure to admit or deny a claim within the 90 day period. As stated' above, according to principles of statutory construction, if a requirement is stated in affirmative terms, unaccompanied by negative words, and has no words expressly invalidating any action taken after non compliance, the requirement is usually interpreted as being directory.
On the other hand, "the use of the word `shall' in conjunction with the word `may' [in other sentences of the same statutory section,] confirms that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings." (Citations omitted; internal quotation marks omitted.) Officeof Consumer Counsel v. Department of Public Utility Control, 252 Conn. 115,122 (2000); see also Hartford Principals' and Supervisors' Associationv. Shedd, 202 Conn. 492, 506 (1987). In this case § 49-42(a) uses the word "may" when referring to a claimant's right to enforce payment on the bond, first by serving notice on the surety and then by filing an action in court, and also uses the word "may" to reflect a court's discretion in awarding attorneys fees. The legislature utilizes the word "shall" however when referring to the timeliness of procedures and the content of the notices that must be given to each party. Additionally, while courts have construed other provisions of the act literally to effectuate its purpose, they have strictly construed other time limits contained in the statute. Blakeslee Arpaia Chapman, Inc. v. El Constructors, Inc., supra at 716. Likewise, in Jones v. Civil Service Commission, 175 Conn. 504,509 (1978) the court strictly on the basis of the juxaposition of "shall" and "may" in a statute determined that "the words must be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." Referring specifically to § 49-42(a) it is noted that the legislature employed the word "may" in two distinct places, both creating an option for enforcement action by the subcontractor/claimant. On the other hand, the legislature used the word "shall" in four places when requiring either the claimant or the surety to perform an act. Thus it is apparent that the legislature intended to assign different meanings to the two words.
In Zoning Board of Appeals v. FOIC, 198 Conn. 498, 505 (1986) the court held time requirements set forth in the Freedom of Information statute to CT Page 15920 be mandatory because "the speedy disposition of complaints is important both to the complainant and to the efficient functioning of the governmental agency involved." In Hartford Principals' and Supervisors'Association v. Shedd, supra at 506-507 the court held that the time frames set forth in § 10-153f for the resolution of labor disputes are mandatory because "time went to the essence of the statute's purpose" which was to have labor contracts finalized within a municipality's budget cycle.
Similarly, this court finds that the history of both the federal and the Connecticut Miller Acts makes it clear that the abiding purpose of the legislation is to facilitate the speedy disposition of subcontractor claims when engaged in municipal construction projects.
Further support for the argument that the 90 day limit is mandatory is found in the decisions in which our courts have ruled that the amendment containing this provision should not be applied retroactively. SeeAmerican Mason's Supply Co. v. F. W. Brown, Co., 174, 219, 225 (1978);Blakeslee Arpaia Chapman, Inc. v. El Constructors Co., supra at 735-36; see also Grinnel Fire Protection Systems Co. v. Hartford Fire Ins. Co., Superior Court, judicial district of Danbury, P. N. 322081 (November 1, 1996, Moraghan, J.); B. W. Dexter II v. A. Prete Son Construction, Superior Court, judicial district of Hartford/New Britain at Hartford, D. N.557033 (August 23, 1996, Aurigemma, J.) (17 Conn.L.Rptr. 464);Balf Co. v. Spera Construction, Superior Court, judicial district of Hartford/New Britain at Hartford, D. N. 348120 (December 11, 1991, Wagner, J.) (CSCR 68).
The general rule regarding retroactivity is found in § 55-3 of the General Statutes which provides: "No provision of the General Statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation shall be construed to have a retrospective affect." "The obligations referred to in [G. S. § 55-3] are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only . . . This presumption in favor of prospective applicability, however, may be rebutted when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." (Emphasis in original; internal quotations marks omitted.) Oxford Tire Supply v.Commissioner, 253 Conn. 683, 691-692 (2000).
Connecticut courts have refused to apply amendments to General Statutes § 49-42 retroactively. Thus, these judicial determinations that the 1997 amendment to § 49-42 should apply prospectively and not retrospectively supports the argument that the rights affected thereby CT Page 15921 are substantive rather than procedural. This view would lead ineluctably to the conclusion that the surety's duty to respond to a claim in the prescribed maimer within 90 days is mandatory rather than directory.
In a slight variation of the issues, other judges of this court have found that a surety's failure to respond to a claim within 90 days can be the basis for a claimant's cause of action for a violation of the Connecticut Unfair Trade Practices Act. Blakeslee Arpaia Chapman, Inc.v. U.S. F G. Co., Superior Court, judicial district of New London at New London, D. N. 520348 (March 4, 1994, Hurley, J.) (11 Conn. Rptr. 169,175); Premier Roofing Co. v. INA, Superior Court judicial district of Danbury at Danbury D.N. 312438 (March 3, 1995 Leheny, J.) (13 Conn. L. Rptr. 544, 547); Production Equipment Co. v. Blakeslee Arpaia Chapman,Inc., Superior Court judicial district of New Haven at Meriden D.N. 247485 (January 3, 1996, Silbert, J.) (15 Conn.L.Rptr. 558, 559). This discreet body of law constitutes further support for the status of this 90 day requirement as substantive and therefore mandatory.
Having held the 90 day pay or deny provision to be mandatory and not directory the court must now determine whether the surety's failure to adhere to the requirement results in automatic approval of payment to the subcontractor/claimant.
The result that has uniformly emanated from our case law when a mandatory statutory time limit has been violated in the context of administrative law, has been to invalidate the action of the particular agency which committed the violation. Hartford Principals' andSupervisors's v. Shedd, supra at 505. Zoning Board of Appeals v. FOIC, supra at 505. Thus, if the action of an administrative agency in denying an application for a specified form of relief is null and void because of failure to comply with a mandatory time limit, the legal effect is that the relief requested is granted. Whether an agency's action is held illegal on the merits or because it failed to act in accordance with the statutory time limits is immaterial. The result is the same viz: the person seeking the relief is awarded the relief. So too with § 49-42, it does not matter whether the surety's denial of the plaintiff's claim was in bad faith or without substantial basis in law or in fact, its failure to act within the prescribed 90 day period was equally illegal and the plaintiff is entitled to the relief sought in its notice of claim. Therefore, the surety's denial of June 26, 1997 was null and void.
Except for the defense of the statute of limitations the court's disposition of the plaintiff's claims has preclusive effect on the defendant's special defenses and counterclaim and obviates the need for any further adjudication save for the plaintiff's request for attorneys CT Page 15922 fees and the statutory mandate for interest under § 49-42(a). With respect to the defendants' first special defense of the statute of limitations, the court finds that the defendants have failed to sustain their burden of proof.
Attorneys fees are awardable under the statute only if the denial of liability or the defenses interposed were "without substantial basis in law or fact." In view of the novelty of the issues involved and the good faith nature of the defenses the court cannot say that the plaintiff has met the statutory threshold of "without substantial basis". Therefore, the request for attorneys fees is denied.
The statute further provides that "[I]n any such proceeding, the court judgment shall allow interest at the rate of interest specified in the . . . contract under which the claim arises, or if no such interest is specified, at the rate of interest as provided in § 37-3a upon the amount recovered, computed from the date of service of the notice of claim. . . ." The notice of claim was served on March 17, 1997.
Judgment may enter on counts 3 and 4 of the Amended Complaint as against the defendant. Frontier Insurance Co. as follows:
Interest is calculated as follows:
 $14,467.54 — North Street 5,761.99 — Old Greenwich $20,229.53 x .10 ÷ 365 = 5.619 per day = $2,022.95 per year
3/17/97 — 3/17/00 = $6,068.85
 3/17/00 — 12/01/00 = 259 days x 5.619 = $1,455.32 6,068.85
7,524.17 Total Interest 20,229.53 Total Principal $27,753.70 Total Judgment
Per diem is 5.619 per day until date of payment.
BY THE COURT
Mottolese, Judge