[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#107)
 I FACTUAL AND PROCEDURAL HISTORY
The defendant, HRH/Atlas Construction, Inc. (HRH/Atlas), is a general contractor which entered into a contract with the University of Connecticut for work on the Agricultural Biotechnology Building Project (the project). On August 10, 1998, HRH/Atlas, as principal, and the CT Page 8128 defendant, Liberty Mutual Insurance Company (Liberty Mutual), as surety, executed a payment bond pursuant to General Statutes § 49-41. HRH/Atlas subcontracted with Gryphon Construction, Inc. (Gryphon) to build certain portions of the project. The plaintiff, Kamco Supply Corp. (Kamco), supplied materials to Gryphon between July 30, 1999 and October 31, 1999, for use in the project. The total price of the materials supplied to the project was $38,461.98.
On July 19, 2000, the plaintiff filed a complaint seeking full payment for the materials supplied to Gryphon. The plaintiff alleges that it has not been paid for the materials by the defendants or Gryphon. Pursuant to General Statutes § 49-42 (a), the plaintiff provided notice of its claim for payment to the defendants and the University of Connecticut on April 24, 2000. The defendants each filed an answer to the complaint. HRH/Atlas admits that the plaintiff sold and delivered materials to Gryphon for use in the project, and both defendants admit that they have not paid the plaintiff. As a special defense, Liberty Mutual asserts that some or all of the plaintiff's claim is barred by the failure to provide written notice of its claim within the time period required by General Statutes § 49-42.
On March 28, 2001, the plaintiff filed a motion for summary judgment and a memorandum in support of its motion. The plaintiff also submitted affidavits from the credit manager for Kamco and the president of Gryphon, invoices for the materials supplied to Gryphon, and a copy of its notice of claim for payment under the defendants' bond. The defendants filed an objection and memorandum in opposition to the motion for summary judgment. The defendants also filed a motion to dismiss for lack of jurisdiction which was briefed by both parties and argued by them contemporaneously with the plaintiff's motion for summary judgment. The defendants' motion to dismiss was based on essentially the same claim as their objection to summary judgment and is denied.
 II STANDARD FOR SUMMARY JUDGMENT
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of CT Page 8129 law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Brackets in original; citations omitted; internal quotation marks omitted.) Community Action for Greater Middlesex County,Inc. v. American Alliance, 254 Conn. 387, 397-98, 757 A.2d 1074 (2000).
 III DISCUSSION
In the present case, the parties stipulated to the material facts at short calendar and in their briefs and supporting documentation. Thus, there is no dispute as to the dates the materials were supplied to the project, that the materials were in fact used on the project, and that the plaintiff has not been paid for the materials, by the subcontractor, Gryphon, or by either of the defendants. The parties further agree that recovery by the plaintiff under the bond depends on when the time requirement in General Statutes § 49-42 (a) begins to run. Therefore, the only issue before the court in this motion is whether the plaintiff provided timely notice under the statute of its claim for payment under the bond.
"General Statutes §§ 49-41 through 49-43, which provide for furnishing of bonds guaranteeing payment (payment bonds) on public works construction projects, were enacted to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens." (Internal quotation marks omitted.) Blakeslee Arpaia Chapman, Inc. v. ElConstructors, Inc., 239 Conn. 708, 714, 687 A.2d 506 (1997). "Section49-41 requires that the general contractor provide a payment bond with surety to the state or governmental subdivision, which bond shall guarantee payment to those who supply labor and materials on a public works project. . . . Section 49-42 provides that any person who has performed work or supplied materials on a public works project, but who has not received full payment for such materials or work, may enforce his right to payment under the payment bond." (Citations omitted.) Id., 715-716.
General Statutes § 49-42 (a) provides, in pertinent part, that "any person who supplied materials or performed subcontracting work not included on a requisition or estimate who has not received full payment for such materials or work within sixty days after the date such materials were supplied or such work was performed, may enforce his right to payment under the bond by serving notice to the contractor named as principal in the bond . . . within one hundred eighty days after the datesuch materials were supplied or such work was performed." (Emphasis CT Page 8130 added.)
Section 49-42 (a) was revised in 1994. Prior to 1994, § 49-42 (a) provided, in pertinent part, that "[e]very person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefore before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundredeighty days after the date on which he performed the last of the labor orfurnished the last of the material for which the claim is made, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond." (Emphasis added.)
The defendants argue that the amended language in General § 49-42
(a) changed the date from which the claim period begins to run. Therefore, the defendants further assert that under the current statute a supplier of materials for a public project making a claim for payment must provide notice within one hundred eighty days after each shipment of supplies. Based on the defendants' interpretation of § 49-42 (a), to be entitled to payment under the bond, the plaintiff would have been required to give notice within one hundred eighty days of each individual shipment of materials to Gryphon between July 31, 1999 and October 31, 1999.
On the other hand, the plaintiff argues that it is only required to provide notice within one hundred eighty days after the last shipment of materials to Gryphon. Based on the plaintiffs interpretation of the statute, the notice of claim must be sent within one hundred eighty days from the date of the last shipment of materials to Gryphon (October 31, 1999), to entitle the plaintiff payment for the materials supplied to the project.
The Supreme Court "has relied on the rule of strict construction when the issue was whether the claimant's notice complied with the specific time requirements of the statute." Okee Industries, Inc. v. NationalGrange Mutual Insurance Corp., 225 Conn. 367, 373, 623 A.2d 483
(1993). "We have, however, relied on the rule of liberal construction when the issue was eligibility for statutory coverage of a particular class of subcontractors . . . or a particular type of supplier of materials." Id., 373-74. "In other words if the statute itself imposes specific constraints we have held these constraints to be mandatory; if the statute leaves room for construction, we have construed its requirements liberally in order to implement the statute's remedial purpose." Id., 374. Before the court can CT Page 8131 determine whether the plaintiff strictly complied with the specific time requirements of General Statutes § 49-42 (a), the court must first resolve the dispute over when the claim period begins to run under section49-42 (a).
The resolution of this issue requires an analysis of General Statutes § 49-42 (a). The court is guided by the well-established principles of statutory construction. Herbert S. Newman Partners v. CFCConstruction Ltd. Partnership, 236 Conn. 750, 755, 674 A.2d 1313 (1996). "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 755-56.
"In construing a statute common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) Willow Springs Condominium Assn., Inc. v.Seventh BRT Development Corp., 245 Conn. 1, 26, 717 A.2d 77 (1998). The court "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . . It is also a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." Id., 30-31.
"As with any issue of statutory interpretation, our initial guide is the language of the statute itself." (Internal quotation marks omitted.)Herbert S. Newman Partners v. CFC Construction Ltd. Partnership, supra, 236 Conn. 756. "It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statuteprovisions which are not clearly stated." (Emphasis added; internal quotation marks omitted.) Rutledge v. State, 63 Conn. App. 370, 380, ___ A.2d ___ (2001). The plain language of the statute requires notice of a claim for payment "within one hundred eighty days after the date such materials were supplied." General Statutes § 49-42 (a). The legislature could have stated that notice must be provided after one hundred eighty days from the dates of each shipment of materials if that was the result which the legislature intended, but the legislature did not insert this language in the statute. In fact, there is nothing in the statute to indicate that the legislature intended to create a separate claim period for each shipment of materials, which would require a material supplier to provide a separate and individual notice of claim for payment for each shipment. This construction would lead to absurd consequences or bizarre results. Rather, the statute refers to all of the CT Page 8132 materials supplied by a subcontractor and does not separate or distinguish the claim periods or materials by the specific dates on which the materials were supplied.
Comparison of § 49-42 (a) and 49-42 (b) is helpful because these sections contain the same language regarding the date on which the statutory time period begins to run. General Statutes § 49-42 (b) provides, in pertinent part, that "in the case of a person supplying materials or performing subcontracting work not included on a requisition or estimate, no such suit may be commenced after the expiration of one year after the date such materials were supplied or such work wasperformed." (Emphasis added.) Section 49-42 (a) provides the time in which the claim period begins to run and § 49-42 (b) provides the time in which a civil suit may be commenced. "[W]here the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance." Willow Springs Condominium Assn., Inc. v.Seventh BRT Development Corp., supra, 245 Conn. 27. The Supreme Court determined that "[s]ection 49-42 (b) requires a claimant to commence a suit on a payment within one year of the day that the claimant lastperformed work or supplied materials on the bonded project." (Emphasis added.) Herbert S. Newman Partners v. CFC Construction Ltd.Partnership, supra, 236 Conn. 766. Based on the similar language of § 49-42 (a) and (b) and the Supreme Court's interpretation of the language in § 49-42 (b), the court finds that General Statutes §49-42 (a) requires a person supplying materials or performing work that is not included on a requisition or estimate to provide notice of a claim for payment within one hundred eighty days after the day that the person last supplied materials or performed work.
The official Summary of the 1994 Public Acts prepared by the Office of Legislative Research provides further support for this construction of the language in § 49-42 (a). The summary for Public Acts 1994, No. 94-188, § 16, indicates that the language of § 49-42 (a) was amended primarily to distinguish between subcontractors whose work or materials were included on a requisition or estimate, and those subcontractors whose work or materials were not included on a requisition or estimate. "The act modifies this process in a way that provides additional protection for subcontractors whose work is performed or materials supplied under a requisition or estimate. The law and many DOT contracts allow the state to retain up to 2.5% of the value of a contract until a project has been substantially completed by the general contractor. If a subcontractor performs its work or delivers materials early in the contract period, the statutory time limits for the subcontractor's claim can run out before the prime contractor receives the retainage from the state that would subsequently be passed on to the subcontractors performing the work for which payment was retained." CT Page 8133 Office of Legislative Research, Summary of 1994 Public Acts, Connecticut General Assembly, p. 252. The summary further states that "[f]or a subcontractor whose work is defined in a requisition or estimate, the act bases the deadline for filing a claim on the bond on the date the general contractor receives payment from the state or municipality rather than on the last day work was performed or materials were supplied." Office of Legislative Research, Connecticut General Assembly, Summary of 1994 Public Acts, p. 253. The summary states, in relevant part, that "[f]or subcontractors whose work is not defined in a requisition or estimate, the date from which the claim periods runs remains the last day on whichwork was performed or materials were supplied." (Emphasis added.) Office of Legislative Research, Connecticut General Assembly, Summary of 1994 Public Acts, p. 253. It is undisputed that the plaintiffs materials were not "defined in a requisition or estimate."
Based on the foregoing principles of statutory construction, the court concludes that to enforce payment on a surety bond, § 49-42 (a) requires a person supplying materials or performing work not included on a requisition or estimate to provide notice of a claim for payment within one hundred eighty days after the last of the materials were supplied or the last of the work was performed. This, the plaintiff did.
Accordingly, for the reasons above as stated, I conclude that the plaintiff has demonstrated the nonexistence of a genuine issue of material fact, and its motion for summary judgment must be, and is granted as to liability. The matter shall be assigned for a hearing in damages.
 ____________________ TELLER, SENIOR JUDGE